

## MOUNCE, GREEN, MYERS, SAFI, PAXSON & GALATZAN
### A PROFESSIONAL CORPORATION
### ATTORNEYS AND COUNSELORS AT LAW

ANDRÉS E. ALMANZÁN*
RAYMOND BENAVIDES III*
MERWAN N. BHATTI*
JOHN S. BIRKELBACH
FELICIA DE LEÓN-RENDON*
MARK D. DORE*
LAURA ENRIQUEZ*
MICHELLE D. ESPARZA
CARL H. GREEN
BRUCE A. KOEHLER*
RYAN LITTLE*
JAMES A. MARTINEZ*
DAVID M. MIRAZO*
EMMANUEL MORGA
CAL MUNDELL*
H. KEITH MYERS
KURT G. PAXSON
MONICA L. PEREZ*
CLYDE A. PINE, JR. *

REID P. RENDON*
S. ANTHONY SAFI
DARRYL S. VEREEN
MARIO YAGLE

STEVEN L. HUGHES
ARTHUR R. PIACENTI
OF COUNSEL

MORRIS A. GALATZAN
(1911-1999)
WILLIAM T. KIRK
(1940-2002)
WILLIAM J. MOUNCE
(1929-2018)

TELEPHONE: (915) 532-2000

MAILING ADDRESS:
P.O. BOX 1977
EL PASO, TEXAS 79999-1977

STREET ADDRESS:
100 N. STANTON, SUITE 1000
EL PASO, TEXAS 79901-1463

FACSIMILE: (915) 541-1548

WEBSITE: WWW.MGMSG.COM

*ALSO MEMBER OF NEW MEXICO BAR

March 8, 2022

**Via E-mail**
Michael Nevarez
The Nevarez Law Firm, PC
7362 Remcon Circle
El Paso, Texas 79912

> Re: *In re: the Val-Eliz Children's Trust*, Case No. 22-30074-hcm, United States Bankruptcy Court for the Western District of Texas, El Paso Division

Dear Mr. Nevarez:

In response to the Subpoena to Produce Documents, Information, or Objects, or to Permit Inspection of Premises in a Bankruptcy Case, Dkt. No. 34 in the above-referenced bankruptcy case (the "Subpoena") issued to MJ Real Properties, Inc. ("MJRP"), and subject to your email confirmation on Friday that attorney/client and work product privileged documents are not subject to or requested by the Subpoena, documents responsive to the Subpoena are enclosed, being generally as follows:

> With respect to Request No. 1a within the Subpoena, it is not known to MJRP as to which trust is the Debtor in the bankruptcy case; MJRP has raised this point previously. However, assuming that the Debtor is the trust described as the December Trust in MJRP's Motion for Relief from Stay, Dkt. No. 25, then there is a deficiency amount owing of $99,912.01 as of March 7, 2022, after providing credit for a valid foreclosure sale, as well as additional trespass damages. The calculations of MJRP's estimated damages as of March 7, 2022 are enclosed, along with copies of the Promissory Note and Deed of Trust.

> With respect to Request No. 1b within the Subpoena, there was a single foreclosure sale that actually occurred conducted by the substitute trustee pursuant to the referenced Appointment of Substitute Trustee. The following documents are thereafter enclosed:

> 1. Appointment of Substitute Trustee;
> 2. Notice of Default and Notice of Intent to Accelerate dated March 24, 2020;

Michael Nevarez
March 8, 2022
Page 2

3. Notice of Acceleration in Trustee's Sale dated May 11, 2020;
4. Notice of Substitute Trustee's Sale;
5. Substitute Trustee's Deed;
6. Affidavit of Notice to the Debtor;
7. Email correspondence to Mannie Kallam dated June 3, 2020;
8. Similar email correspondence dated June 3, 2020 with Richard Roman[1];
9. Notice to Vacate dated June 3, 2020;
10. Petition in MJ Real Properties Inc. v. Val-Eliz Children's Trust under Trust Agreement Dated December 13, 2006;
11. Motion for Summary Judgment filed March 10, 2021 in title lawsuit;
12. MJ Real Properties, Inc. Proof of Claim - In re: Val Blazer, Case No. 21-30069-hcm
13. Order Granting Motion for Summary Judgment filed April 23, 2021 in title lawsuit;
14. Petition in MJ Real Properties, Inc. v. Dawn Star Blazer. et. al., Cause No. 421-00317-FED;
15. Judgment in Cause No. 421-00317-FED;

Please contact me if you have any questions or comments regarding the foregoing.

Very truly yours,

MOUNCE, GREEN, MYERS, SAFI, PAXSON
& GALATZAN
A Professional Corporation

By: _____
Clyde A. Pine, Jr.

Encl.

cc:     MJ Real Properties, Inc.

---

[1] At the time, each such lawyer was independently trying to negotiate some sort of settlement with MJRP, and thereafter correspondence was sent to each (incidentally, no settlement was ever reached).

**Calculations of Claim\***
**(as of March 7, 2022)**

Deficiency Claim

| | |
|---|---|
| Total Debt under May 30, 2018 Promissory Note from December Trust as of June 2, 2020 foreclosure sale: | $430,015.53 |
| Credit Bid at June 2, 2020 foreclosure sale | ($375,000.00) |
| Deficiency Amount immediately after June 2, 2020 foreclosure sale | $55,015.53 |
| Interest Accrual on Deficiency Amount from day after foreclosure sale date through day before petition date | $16,385.41 |

*Per Diem Interest on Deficiency Amount (at default rate of 18% per annum) = $27.128157*

*Dates between June 3, 2020 and January 27, 2022 = 604*

| | |
|---|---|
| Attorney Fees on Deficiency Amount through date before petition date | $28,511.07 |
| SUB-TOTAL | $99,912.01 |

Trespass Claim

| | |
|---|---|
| Est. damages for trespass for wrongful detainer of Property from June 3, 2020 through March 7, 2022 | $151,152.03 |

Estimated lost value ($7,167/mo.)

Months between June, 2020 and March 7, 2022 = 21.09 months

| | | |
|---|---|---|
| | **TOTAL** | **$251,064.04** |

\* - These calculations assume that the foreclosure sale was valid, and that the borrower December Trust is the Debtor in the pending bankruptcy case (and thus certain restrictions on accrual of interest and attorney fees apply). Trespass damages should continue to accrue after the petition date, and may represent administrative expense claims. These calculations are subject to change.

## NOTE

Principal Amount:
$400,000.00

Loan No.:
El Paso, Texas
Effective MAY $30$ , 2018

1.    **Amount, Obligation to Pay, Interest Rate.** FOR VALUE RECEIVED, in such installments and at the times hereinafter stated, DAWN STAR BLAZER, SUCCESSOR TRUSTEE FOR THE VAL-ELIZ CHILDREN'S TRUST, UNDER TRUST AGREEMENT DATED DECEMBER 13, 2006 (herein "Maker" or "Borrower", whether one or more), whose address is 5700  Flager , El Paso, Texas  79938 promises to pay to the order of MJ REAL PROPERTIES, INC., A TEXAS CORPORATION (herein called "Payee" or "Lender", whether one or more), whose address is 8650 YERMOLAND DRIVE, EL PASO, TEXAS 79907, in immediately available funds constituting legal tender of the United States of America, the principal amount of FOUR HUNDRED THOUSAND and 00/100 US DOLLARS ($400,000.00), with interest on the unpaid principal amount (sometimes "unpaid principal balance" or "outstanding principal balance") from time to time outstanding, interest to accrue from the date hereof, as follows:

ANNUAL INTEREST RATE ON UNPAID PRINCIPAL AMOUNT FROM DATE:
TEN AND 99/100 PERCENT (10.99%)

2.    **Payment Terms.** (principal and interest): In equal monthly installments of $3,806.27 each, including interest, with the first installment being due and payable on or before the _1_ day of  July  , 2018, and a like installment to become due and payable on or before the same day of each succeeding month thereafter until the expiration of seven (7) years from the date of this note (hereinafter referred to as the "Maturity Date"). At that time the entire amount of principal and interest remaining unpaid will be payable. Interest will be calculated on the unpaid principal to the date of each installment. Each payment will be credited (1) first to any unpaid collections or other costs as allowed by this note and/or the Deed of Trust or by law, (2) then to Late Charges, (3) then to the accrued interest, and (4) then to reduction of the principal. This final payment is a balloon payment (hereinafter referred to as the "Balloon Payment").

THIS NOTE IS PAYABLE ON THE MATURITY DATE. ON SUCH DATE YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL AMOUNT OF THE NOTE AND UNPAID EARNED ACCRUED INTEREST THEN DUE.  THE PAYEE IS UNDER NO OBLIGATION TO REFINANCE THE NOTE AT THAT TIME.  YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE PAYEE YOU HAVE THIS NOTE WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS NOTE AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME PAYEE.

MATURED UNPAID AMOUNTS WILL BEAR INTEREST AT THE RATE OF 1 ½% PER MONTH OR AT THE HIGHEST LAWFUL RATE, IF PERMITTED BY LAW.

THE INTEREST RATE HEREUNDER SHALL BE CALCULATED ON A DAILY BASIS.

3.    **Security.** This Note is secured by all instruments heretofore, now or hereafter executed by Maker or any guarantors in favor of Payee and by their terms securing the payment of this Note (hereinafter "Security Documents") including without limitation:

A.  That certain Deed Of Trust, Security Agreement, Assignment Of Rents, Fixture Filing And Financing Statement of even date herewith by and between Maker and Payee; and

B.  That certain Guaranty of even date herewith by and between VALOR BLAZER and Payee.

4.    **Priority.** The lien or liens securing this Note are a first lien and prior to any other encumbrances thereon.

- 1 -


Initialed for
Identification

5.    **Manner and Place of Payment; Holidays**. All payments on this Note shall be made in coin or currency which, at the time or times of payment, are immediately available funds constituting legal tender for public or private debts in the United States of America. All payments on this Note shall be made in El Paso County at the address of Payee as indicated in the first paragraph hereinabove, or at such other address in El Paso County as Payee shall designate in writing. If the prescribed date of payment of any of the principal of or interest hereon is a Saturday, Sunday or legal holiday at the location of the office of Payee, such payment shall be due on the next succeeding business day.

6.    **No Prepayment In Part And Prepayment Penalty Provision**. Maker and Payee have negotiated the amount and terms of this note and Payee funded the loan memorialized by this note with reliance by Payee that Maker will not prepay this note unless it pays the prepayment penalty described herein. Further, by loaning the money memorialized by this note to Maker, Payee has lost the opportunity to make other loans with the money loaned to Maker. Therefore, Maker covenants, warrants and agrees that, during the first three (3) years, even if this note is accelerated as a result of Maker's default, the Maker promises to pay to the order of the Payee, the prepayment penalty described herein and due at the time of acceleration. Notwithstanding anything contained herein to the contrary, during the first three (3) years of this note, Maker may not prepay this note in part. Maker may prepay this note in whole provided however, Maker will be subject to and shall pay to the order of Payee, a prepayment penalty as described below:

(a)    If this note is prepaid in whole during the first year, the prepayment penalty is three percent (3%) of the outstanding Principal Amount due at the time of prepayment;

(b)    If this note is prepaid in whole during the second year, the prepayment penalty is two percent (2%) of the outstanding Principal Amount due at the time of prepayment; and

(c)    If this note is prepaid in whole during the third year, the prepayment penalty is one percent (1%) of the outstanding Principal Amount due at the time of prepayment.

After the expiration of three (3) years from date of this Note, this Note may be prepaid in whole or in part.

Subject to the Prepayment Penalty, all permitted sums paid hereon shall be applied (1) first to any unpaid collections or other costs as allowed by law, (2) then to Late Charges, (3) then to the accrued interest, and (4) then to reduction of the principal. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: MJ REAL PROPERTIES, INC., A TEXAS CORPORATION, 8650 YERMOLAND DRIVE, EL PASO, TEXAS 79907.

7.    **Default and Acceleration**. Time is of the essence of this Note. Any one or more of the following events or conditions shall constitute a default hereunder: (i) failure by Maker to timely pay any amount due hereunder; (ii) default or other failure by Maker to perform any term, covenant, condition or obligation of Maker under this Note or related document or any agreement between Maker and Payee; (iii) failure by Maker to pay any amount due under the Related Note; (iv) default or other failure by Maker to perform any term, covenant, condition or obligation of Maker under the Related Note or related document or any agreement between Maker and the payee of the Related Note; (v) failure by Maker to pay any other debt to Payee when due; (iv) any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter; (v) the dissolution or

- 2 -

Initialed for ____
Identification ____

termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower; (vi) commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this event of default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute; (vii) any of the preceding events occurs with respect to any guarantor of any of the indebtedness or any guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any event of default; (viii) any change in ownership of twenty-five percent (25%) or more of Borrower; (ix) a material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired; (x) good faith belief on the part of Payee that the prospect of repayment has been impaired; or (xi) material adverse change in the financial condition of Maker. If any such default occurs, Payee may, then or at any time thereafter, without notice and at its option, accelerate maturity and cause all of the unpaid principal balance of this Note, with interest, fees and charges accrued hereon, and all obligations in all instruments securing or collateral to it, to become immediately due and payable. If Payee waives Payee's right to accelerate maturity as a result of a default hereunder, either one or more times or repeatedly, nevertheless Payee shall not be deemed to have waived the right to require strict compliance with the terms of this Note thereafter.

8. **Interest after Default, Acceleration or Maturity.** Should default be made in payment of any of the indebtedness evidenced hereby prior to the final scheduled payment date, or after the entire principal amount hereof shall have become due and payable, whether by acceleration, at maturity, or otherwise, the entire unpaid balance of said principal sum shall bear interest, while such default continues both before and after judgment, at eighteen percent (18%) per annum on the unpaid principal balance until paid or the maximum amount allowed under Texas and Federal law. PROVIDED, HOWEVER, that the interest payable under this paragraph shall in no way exceed the Maximum Rate, as defined hereinafter.

9. **Savings and Spreading.** It is expressly stipulated and agreed to be the intent of Maker and Payee at all times to comply with the applicable Texas law governing the maximum rate or amount of interest payable on or in connection with this Note and the loan evidenced hereby ("Loan") (or applicable United States federal law to the extent that it permits the Payee to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Note or under the other Security Documents, or contracted for, charged, taken, reserved or received with respect to the Loan, or if acceleration of the maturity of this Note or if any prepayment by maker results in Maker having paid any interest in excess of that permitted by law, then it is Maker's and Payee's express intent that (i) all excess amounts theretofore collected by Payee be credited on the principal balance of this Note (or, if this Note has been or would thereby be paid in full, refunded to Maker); and (ii) the provisions of this Note immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder. The right to accelerate maturity of this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Payee does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the applicable usury ceiling. Notwithstanding any provision contained in this Note that permits the compounding of interest, including without limitation any provision by which any of the accrued interest is added to the principal amount of this Note, the total amount of interest that Maker is obligated to pay and

- 3 -

Initialed for DAB
Identification

Payee is entitled to receive with respect to this Note shall not exceed the amount calculated on a simple (i.e., non-compounded) interest basis at the Maximum Rate (as defined hereinafter) on principal amounts actually advanced to or for the account of Maker, including the initial funds advanced contemporaneously herewith. As used herein, the term "Maximum Rate" shall mean the maximum non-usurious rate of interest which may be lawfully contracted for, charged, taken, reserved or received by Payee from Maker in connection with the loan evidenced hereby under applicable Texas law (or applicable United States federal law to the extent that it permits Payee to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law).

10.     **Attorney's Fees and Expenses.** In the event that Payee or other holder of this Note brings suit hereon, or employs an attorney or incurs expenses to compel payment of this Note or any portion of the indebtedness evidenced hereby, or to cure any defaults under this Note, whether through suit, probate, insolvency, reorganization, bankruptcy, or any other legal or informal proceeding, the Maker and all endorsers, guarantors and sureties agree additionally to pay all reasonable attorney's fees, court costs and other reasonable expenses thereby incurred by Payee or other holder of this Note.

11.     **Waiver; Offset Rights.** Maker and all endorsers, guarantors, sureties and accommodation parties of this Note, both before and after maturity, hereby expressly (i) waive all protest, notice of protest, demand for payment, presentment for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of dishonor, bringing of suit, and diligence in taking any action to collect any amounts called for hereunder and in the handling of properties, rights or collateral at any time existing in connection herewith; (ii) consent to and waive notice of any one or more renewal, extension or modification of this Note, whether made to or in favor of the Maker or any other person or persons, regardless whether such renewal, extension or modification modifies the terms, interest rate or time for payment of the Note and regardless of the length of term of the renewal, extension or modification; (iii) consent to and waive notice of any substitution, exchange or release of any security now or hereafter given for this Note; (iv) consent to and waive notice of the release of any party primarily or secondarily liable hereon; (v) consent to and waive notice of any other indulgences, none of which shall otherwise affect the liability of any of said parties for the indebtedness evidenced by this Note; (vi) agree that it will not be necessary of Payee, in order to enforce payment of this Note, first to institute suit against or to exhaust Payee's remedies against Maker or any other party liable hereunder, nr to proceed against any other security for this Note; and (vii) grant to Payee a security interest in any and all funds now or hereafter on deposit with Payee to the credit or account of Maker or any endorsers, guarantors, sureties, and accommodation parties hereof, as additional security for the payment of this Note; in the event of default hereunder, Payee shall have the unconditional contractual right to retain such funds and apply or offset such funds to the payment of amounts owing hereunder, and shall also have a common law lien against such funds.

12.     **Waiver Of Jury Trial; Damages.** UNLESS OTHERWISE REQUIRED BY LAW, BORROWER AND LENDER, EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (A) ANY RIGHT IT OR HE MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE NOTE, THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY, AND (B) ANY RIGHT IT OR HE MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. FURTHER, BORROWER AND LENDER, EACH HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE NOR AGENT OF LENDER NOR LENDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THESE WAIVERS.

13.     **Dishonored Check Charge.** Borrower will pay a reasonable processing fee if any check given by Borrower to Lender as a payment on this loan is dishonored.

14.     **Joint and Several Liability.** This Note shall be the joint and several obligation of all makers, endorsers, guarantors and sureties, each of whom shall be responsible for the entire amount of this Note; this Note shall be binding upon them and their respective heirs, personal representatives, successors and assigns.

- 4 -

Initialed for  DAB
Identification ___

15.    Definitions. The terms "Maker", "Borrower", "Payee", "Lender" and other nouns and pronouns include the singular and/or plural, as appropriate.  The terms "Maker", "Borrower", "Payee" and "Lender" also include their respective heirs, personal representatives, successors and assigns.  The term "Payee" and "Lender" includes subsequent holders of this Note.  Where the Maker or Borrower is a partnership or joint venture, the term "Maker" and "Borrower" also includes each partner or joint venturer in such party's personal capacity.

16.    Governing Law; Venue. THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS, INCLUDING ALL APPLICABLE FEDERAL LAW; ANY LAWSUIT, ACTION OR OTHER PROCEEDING INVOLVING ANY DISPUTE AMONG THE PARTIES ARISING FROM OR RELATED TO THE SUBJECT MATTER OF THIS NOTE SHALL TAKE PLACE IN EL PASO COUNTY, TEXAS. THE PARTIES AGREE AND CONSENT AND SUBMIT TO JURISDICTION AND VENUE IN EL PASO COUNTY, TEXAS, AND WAIVE ANY AND ALL DEFENSES, OBJECTIONS OR CLAIMS THAT JURISDICTION OR VENUE IS NOT PROPER IN EL PASO COUNTY, TEXAS.

17.    Conflicts. Should the provisions of this Note and the Security Documents dated effective herewith conflict, the provisions of this Note shall prevail.

18.    Late Charge. If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment (individually "Late Charge" in the aggregate "Late Charges"). No "Late Charge" may be assessed against the Balloon Payment.

19.    With Escrow. With each installment Maker shall deposit with Payee in escrow a pro rata part of the estimated annual ad valorem taxes and casualty insurance premiums for the Property. Maker shall pay any deficiency within 30 days after notice from Payee. Maker's failure to pay the deficiency constitutes a default under the deed of trust. The casualty insurance must name Payee as an additional loss payee. Further, at Payee's sole discretion, this note may be collected by Payee's designated escrow agent or collection agent (hereinafter referred to as "escrow agent"). Upon receipt of Maker of notice that the Note has been placed for collection or processing by an escrow agent, Maker agrees to pay any stated or published fee or fees required by said escrow agent in connection with the collection of this Note per escrow agent's normal business practice. These fees, escrow and collection charges include but are not limited to the costs charged by said escrow agent for escrow agent's set up fees, monthly service fees and for late payment notices. Maker's failure to pay these escrow and collection charges shall be a default under this note and the Deed of Trust described above. Notwithstanding anything contained in this note to the contrary, any amounts held in escrow at the time of foreclosure or thereafter, may at the Payee's discretion, be used to pay (1) ad valorem taxes and assessments due for the Property, and (2) any amounts due for the casualty insurance policy and (3) Payee for any amounts owed to Payee.

PRIOR TO SIGNING THIS NOTE, MAKER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. MAKER AGREES TO THE TERMS OF THIS NOTE.

MAKER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.

IN WITNESS WHEREOF, Maker has executed this Note effective as of the date first set forth above.

MAKER:

DAWN   STAR   BLAZER,   SUCCESSOR TRUSTEE FOR THE VAL-ELIZ CHILDREN'S TRUST, UNDER TRUST AGREEMENT DATED DECEMBER 13, 2006
S/S No.: 629626152

-5-



Doc # 20180043800

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

### DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS, FIXTURE FILING AND FINANCING STATEMENT

STATE OF TEXAS §
                          § KNOW ALL MEN BY THESE PRESENTS
COUNTY OF EL PASO §

THAT DAWN STAR BLAZER, SUCCESSOR TRUSTEE FOR THE VAL-ELIZ CHILDREN'S TRUST, UNDER TRUST AGREEMENT DATED DECEMBER 13, 2006, whose address is ᵒ ᴵᴺᴼᴱ ᴸⁱ····· ᴱᴸ ᴵ····, ᵀᴷ ⁷⁹⁹⁵⁵ (herein in the aggregate called "Borrower" or "Grantor") for and in consideration of Ten and No/100 Dollars ($10.00), and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby GRANT, BARGAIN, SELL, TRANSFER, ASSIGN and CONVEY unto STEVEN E. ANDERSON, Trustee, whose address is 1533 Lee Trevino, Suite 205, El Paso, Texas 79936, in Trust, with power of sale, the following described property (all of which is sometimes referred to collectively herein as the "Property"):

(i)       Those certain lands situated in El Paso County, Texas and described in Exhibit "I" attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim, together with all right, title and interest of Grantor in and to (a) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to said lands or the Improvements (as hereinafter defined); (b) any strips or gores between said lands, or any portion or parcel thereof, and abutting or adjacent properties; and (c) all water and water rights, timber, crops and mineral interests pertaining to said lands or said strips or gores (said lands and other rights, titles and interests being hereinafter sometimes called the "Land"), subject to easements, covenants, reservations, and restrictions of record or running with the land, and all oil, gas, water and other mineral reservations, or prior conveyances thereof, of record or running with the land, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, relating to the hereinabove described Property.

(ii)      All buildings, structures and other improvements now or hereafter situated on the Land (such buildings, structures and other improvements being hereinafter sometimes called the "Improvements");

(iii)    All fixtures, equipment, including but not limited to that equipment described on Exhibit "II" attached hereto and incorporated herein by this reference, systems, machinery, furniture, furnishings, inventory, goods, building and construction materials, supplies, and articles of personal property, of every kind and character, now owned or hereafter acquired by Grantor (or Grantor's heirs, representatives, successors or assigns), which are now or hereafter attached to or situated in, on or about the Land or the Improvements, or used in or necessary to the complete and proper planning, development, construction, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing, including but without limiting the foregoing, all contracts and subcontracts, any and all fixtures, equipment, machinery, systems, facilities and apparatus for heating, ventilating, air conditioning, refrigerating, plumbing, sewer, lighting, generating, cleaning, storage, incinerating, waste disposal, sprinkler, fire extinguishing, communications, transportation (of people or things, including but not limited to stairways, elevators, escalators and conveyors), data processing, security and alarm, laundry, food or drink preparation, storage or serving, gas, electrical and electronic, water and recreational uses or purposes; all tanks, pipes, wiring, conduits, ducts, doors, partitions, rugs and other floor coverings, wall coverings, windows, carpets, drapes, window screens and shades, awnings, fans, motors,



NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION
FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY
BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL
SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

### DEED OF TRUST, SECURITY AGREEMENT,
ASSIGNMENT OF RENTS, FIXTURE FILING AND FINANCING STATEMENT

STATE OF TEXAS

COUNTY OF EL PASO

§
§  KNOW ALL MEN BY THESE PRESENTS:
§

THAT DAWN STAR BLAZER, SUCCESSOR TRUSTEE FOR THE VAL-ELIZ
CHILDREN'S TRUST, UNDER TRUST AGREEMENT DATED DECEMBER 13, 2006, whose
address is  9700  Flager , El Paso, TX  79938 .
(herein in the aggregate called "Borrower" or "Grantor") for and in consideration of Ten and No/100
Dollars ($10.00), and other good and valuable consideration, the receipt and sufficiency of which is
hereby acknowledged, does hereby GRANT, BARGAIN, SELL, TRANSFER, ASSIGN and
CONVEY unto STEVEN E. ANDERSON, Trustee, whose address is 1533 Lee Trevino, Suite 205,
El Paso, Texas 79936, in Trust, with power of sale, the following described property (all of which is
sometimes referred to collectively herein as the "Property"):

(i)  Those certain lands situated in El Paso County, Texas and described in Exhibit "I"
attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim,
together with all right, title and interest of Grantor in and to (a) all streets, roads, alleys, easements,
rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing
or proposed, abutting, adjacent, used in connection with or pertaining to said lands or the
Improvements (as hereinafter defined); (b) any strips or gores between said lands, or any portion or
parcel thereof, and abutting or adjacent properties; and (c) all water and water rights, timber, crops
and mineral interests pertaining to said lands or said strips or gores (said lands and other rights, titles
and interests being hereinafter sometimes called the "Land"), subject to easements, covenants,
reservations, and restrictions of record or running with the land, and all oil, gas, water and other
mineral reservations, or prior conveyances thereof, of record or running with the land, and to all
zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any,
relating to the hereinabove described Property.

(ii)  All buildings, structures and other improvements now or hereafter situated on the
Land (such buildings, structures and other improvements being hereinafter sometimes called the
"Improvements");

(iii)  All fixtures, equipment, including but not limited to that equipment described on
Exhibit "II" attached hereto and incorporated herein by this reference, systems, machinery, furniture,
furnishings, inventory, goods, building and construction materials, supplies, and articles of personal
property, of every kind and character, now owned or hereafter acquired by Grantor (or Grantor's
heirs, representatives, successors or assigns), which are now or hereafter attached to or situated in, on
or about the Land or the Improvements, or used in or necessary to the complete and proper planning,
development, construction, use, occupancy or operation thereof, or acquired (whether delivered to
the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all
renewals and replacements of, substitutions for and additions to the foregoing, including but without
limiting the foregoing, all contracts and subcontracts, any and all fixtures, equipment, machinery,
systems, facilities and apparatus for heating, ventilating, air conditioning, refrigerating, plumbing,
sewer, lighting, generating, cleaning, storage, incinerating, waste disposal, sprinkler, fire
extinguishing, communications, transportation (of people or things, including but not limited to
stairways, elevators, escalators and conveyors), data processing, security and alarm, laundry, food or
drink preparation, storage or serving, gas, electrical and electronic, water and recreational uses or
purposes; all tanks, pipes, wiring, conduits, ducts, doors, partitions, rugs and other floor coverings,
wall coverings, windows, carpets, drapes, window screens and shades, awnings, fans, motors,

engines and boilers; and decorative items and art objects (all of which are herein sometimes referred to together as the "Accessories");

(iv)    All (a) building and construction materials and equipment relating to the Land or the Improvements or the Accessories or any part thereof; (b) plans, studies and specifications relating to the Land or the Improvements or the Accessories or any part thereof, including without limitation all site plans, surveys, soil and substrata studies, architectural drawings, plans and specifications, engineering plans and studies, floor plans, landscape plans, and operating or maintenance manuals; (c) contracts and subcontracts relating to the Land or the Improvements or the Accessories or any part thereof; (d) books, records, promotional material, tenant data, leasing material and forms, market studies, and other materials relating to the Land or the Improvements or the Accessories or any part thereof; (e) telephone exchanges relating to the operation and management of the Land or the Improvements; (f) deposits relating to the Land or the Improvements or the Accessories or any part thereof, including but not limited to Grantor's rights in tenants' security deposits, deposits with respect to utility services, and any deposits or reserves hereunder or under any other Loan Document (as herein defined) for taxes, insurance or otherwise; (g) funds, accounts, contract rights, instruments, documents, commitments, general intangibles (including but not limited to trademarks, trade names and symbols), notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (h) permits, licenses, franchises, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (i) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (j) other properties, rights, titles and interests, if any, specified in any Section or any Article of this Deed of Trust as being part of the Property (said properties, rights, titles and interests described in clauses (a) through (j) above being herein sometimes collectively referred to as the "Intangibles"); and

(v)    All (a) proceeds of or arising from the Land, the Improvements, the Accessories and the Intangibles, including but not limited to proceeds of any sale, lease or other disposition thereof, proceeds of each policy of insurance relating thereto (including premium refunds), proceeds of the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law, and proceeds arising out of any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and (b) other interests of every kind and character, and proceeds thereof, which Grantor now has or hereafter acquires in, to or for the benefit of the Land, the Improvements, the Accessories and the Intangibles and all property used or useful in connection therewith, including but not limited to all remainders, reversions and reversionary rights or interests and, in the event the estate of Grantor in and to any or all of the Property is a leasehold estate, all other further or additional title, estates, interests or rights which may exist now or may hereafter be acquired by Grantor in or to the property demised under the lease creating such leasehold estate and including Grantor's rights, if any, to the property demised under such lease and, if fee simple title to any of such property shall ever become vested in Grantor, such fee simple interest, in the same manner as if Grantor had fee simple title to said property as of the date of execution hereof.

## ARTICLE 1

## THE OBLIGATION

Section 1.1    Holder.  This Deed of Trust, as used herein, the expression "this Deed of Trust" shall mean this Deed of Trust, Security Agreement and Assignment of Rents, and all rights, title, interest, liens, security interests, powers and privileges created hereby or arising by virtue hereof, are given to secure payment and performance of the Obligations (as hereinafter defined), including the indebtedness described in Section 1.2 hereof payable to the order of MJ REAL PROPERTIES, INC., A TEXAS CORPORATION, whose address is 8650 YERMOLAND DRIVE, EL PASO, TEXAS 79907 (herein individually "Holder" or "Lender"). The word "Holder", as used herein, shall mean Holder named in this Section and all subsequent holders of the Note at the time in question.

**Section 1.2    Obligations.** The word "Obligations", as used herein, shall mean all of the indebtedness, obligations and liabilities described as follows:

(a)    The indebtedness evidenced by that certain Note of even date herewith incorporated herein by this reference, executed by Grantor and payable to the order of MURLAL PROPERTIES, INC., A TEXAS CORPORATION in the principal amount of $400,000.00, bearing interest as therein specified, containing an attorney's fee clause, interest and principal being payable as therein specified ("Note");

(b)    All indebtedness, obligations and liabilities arising pursuant to the provisions of this Deed of Trust, or any other security agreement, mortgage, deed of trust, collateral assignment, pledge agreement, loan agreement, contract, assignment or other document of any kind now or hereafter evidencing, securing, relating to, or executed in connection with the Obligations, or any part thereof (the Note and all such other documents being herein referred to individually as a "Loan Document" and collectively as the "Loan Documents");

(c)    All other and any additional debts, obligations and liabilities of every kind and character of Grantor, whether now or hereafter existing, in favor of Holder, regardless of whether such debts, obligations and liabilities be direct or indirect, primary, secondary, joint, several, joint and several, fixed or contingent, unsecured or secured by additional or different securities, it being contemplated by Grantor and Holder that Grantor may hereafter become indebted to Holder in further sum or sums; and

(d)    Any and all renewals, modifications, rearrangements, amendments or extensions of all or any part of the indebtedness, obligations and liabilities described or referred to in Subsections 1.2(a), 1.2(b) and 1.2(c) hereof.

Grantor, and each party at any time claiming an interest in or lien or encumbrance against the Property, agrees that: (i) all advances made by Holder from time to time under any of the Loan Documents, and all other portions of the Obligations herein referred to, shall be secured by this Deed of Trust with priority as if all of the same had been advanced, had arisen or become owing or performable on the date of this Deed of Trust, (ii) no reduction of the outstanding principal balance under the Note shall extinguish, release or subordinate any rights, titles, interests, liens, security interests, powers or privileges intended, created or arising hereunder or under any other Loan Document; and (iii) this Deed of Trust shall remain in full force and effect as to any subsequent advances or subsequently arising portions of the Obligations without loss of priority until the Obligations is fully paid, performed and satisfied, all agreements and obligations, if any, of Holder for further advances have been terminated and this Deed of Trust has been released of record by Holder.

## ARTICLE 2

### CERTAIN REPRESENTATIONS, WARRANTIES AND COVENANTS OF GRANTOR

**Section 2.1    Warranties and Representations.** Grantor represents, warrants and undertakes that:

(a)    Grantor has full right and authority to execute and deliver this Deed of Trust;

(b)    Grantor has, in Grantor's own right, good and indefeasible title in fee simple to the Property free from any encumbrance superior to the indebtedness hereby secured, subject only to the liens, easements and encumbrances to title set forth in the Original Policy ("Permitted Exceptions");

(c)    No part of the Property is Grantor's homestead of any type or character and this Deed of Trust is and shall continue to be a valid and enforceable lien and security interest against the Property until the Obligations is fully discharged;

(d)     Grantor and each guarantor of the Obligations are solvent and no proceeding under any Debtor Relief Laws (as hereinafter defined) is pending or threatened by or against any of them, or any affiliate of any of them, as a debtor;

(e)     If Grantor is a corporation, partnership or other entity, Grantor is and shall until the Obligations is fully discharged continue to be (i) duly organized, validly existing and in good standing under the laws of the state of Grantor's organization, and in good standing under Texas law, (ii) in compliance with all conditions prerequisite to Grantor's lawfully doing business in the State of Texas and (iii) possessed of all power and authority necessary to own and operate the Property;

(f)     All Loan Documents executed by Grantor have been duly authorized, executed and delivered by Grantor, and the obligations thereunder and the performance thereof by Grantor in accordance with their terms are within Grantor's powers and are not in contravention of any law, agreement or restriction to which Grantor or the Property is subject;

(g)     The loan evidenced by the Note is solely for the purpose of carrying on or acquiring a business of Grantor, and is not for personal, family, household or agricultural purposes;

(h)     The statement above of Grantor's mailing address is true and correct;

(i)     All reports, financial statements and other information heretofore furnished to Holder by or on behalf or at the request of Grantor with respect to the Property, Grantor, any guarantor or other party liable for payment or performance of the Obligations or any part thereof are, and all of the same hereafter furnished to Holder will when furnished be, true, correct and complete in all material respects and do not, or will not, omit any fact, the inclusion of which is necessary to prevent the facts contained therein from being materially misleading; and

(j)     Since the date of the financial statements of Grantor or of any guarantor or other party liable for payment or performance of the Obligations or any part thereof heretofore furnished to Holder, no material adverse change has occurred in the financial condition of Grantor or any such other party, and, except as heretofore disclosed in writing to Holder, Grantor or any such other party has not incurred any material liability, direct or indirect, fixed or contingent.

Section 2.2     Covenants.  Grantor, for Grantor and Grantor's successors and permitted assigns, hereunder covenants, agrees and undertakes to:

(a)     Pay and perform the Obligations in accordance with the terms thereof;

(b)     Subject to Section 7.18, prior to the same becoming delinquent, pay or cause to be paid all taxes, assessments and governmental charges of every kind or character in respect of the Property or any part thereof and, within thirty (30) days of payment thereof, to furnish Holder with evidence satisfactory to Holder of the timely payment of such taxes, assessments and governmental charges (the word "assessments" as used herein includes not only assessments and charges by any governmental body, but also all other assessments and charges of any kind, including, but not limited to, assessments or charges for any utility or utility service, easement, license or agreement upon, for the benefit of, or affecting the Property, and assessments and charges arising under subdivision, condominium, planned unit development or other declarations, restrictions, regimes or agreements);

(c)     Subject to Section 7.18, purchase, or cause to be purchased, policies of insurance with respect to the Property with such insurers, in such amounts and covering such risks as shall be satisfactory to Holder, including, but not limited to, (i) comprehensive general public liability insurance with policy limits acceptable to Holder; (ii) loss or damage by fire, lightning, hail, windstorm, explosion and such other hazards, casualties and contingencies (including at least six months rental insurance in an amount equal to the gross rentals for such period and broad form boiler and machinery insurance) as are normally and usually covered by extended coverage policies in effect where the Property is located; provided that in the absence of written direction from Holder each fire and extended coverage policy shall include a "standard mortgage clause" and shall provide by way of endorsement, rider or otherwise that no such insurance policy shall be cancelled, endorsed, altered, or reissued to effect a change in coverage unless such insurer shall have first given Holder thirty days prior written notice thereof, such policy shall be on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the policy, but

DEED OF TRUST, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS - Page 4

not less than 100 percent of the insurable value (based upon replacement cost), and the deductible clause, if any, of the fire and extended coverage policy may not exceed the lesser of one percent of the face amount of the policy or $1,000.00; (iii) loss or damage by flood, if the Property is in an area designated by the Secretary of Housing and Urban Development, or other governmental or quasi-governmental authority as an area having special flood hazards, in an amount equal to the principal amount of the Note or the maximum amount available under the Flood Disaster Protection Act of 1973, and regulations issued pursuant thereto, as amended from time to time, whichever is less, in form complying with the "insurance purchase requirement" of that Act; and (iv) such other insurance and endorsements, if any, as Holder may require from time to time, or which is required by the Loan Documents;

(d)　Cause all insurance (except general public liability insurance) carried in accordance with Subsection 2.2(c) hereof to be payable to Holder as a mortgagee pursuant to a "standard mortgage clause", and not as a coinsured, to deliver the original policies of insurance to Holder, and, in the case of all policies of insurance carried by each Lessee (as that term is hereinafter defined) for the benefit of Grantor, to cause all such policies to be payable to Holder as Holder' interest may appear;

(e)　Subject to Section 7.18, pay, or cause to be paid, all premiums for insurance required when due, furnish to Holder satisfactory proof of the timeliness of such payments and deliver all renewal policies to Holder at least thirty days before the expiration date of each expiring policy;

(f)　Comply with all federal, state, or municipal laws, rules, ordinances and regulations applicable to the Property and Grantor's ownership, use and operation thereof, and comply with all, and not violate any, easements, restrictions, agreements, covenants and conditions with respect to or affecting the Property or any part thereof;

(g)　At all times maintain, preserve and keep the Property in good repair and condition and presenting a first-class appearance, and from time to time, make all necessary and proper repairs, replacements and renewals, and not commit or permit any waste on or of the Property, and not to do anything to the Property that may impair its value;

(h)　Promptly pay all bills for labor and materials incurred in connection with the Property and never permit to be created or to exist in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and security interests hereof, for any such bill, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional lien or security interest on a parity with or superior to any of the liens or security interests hereof;

(i)　From time to time, at the request of Holder, (i) promptly correct any defect, error or omission which may be discovered in the contents of this Deed of Trust or in any other Loan Document or in the execution or acknowledgment thereof; (ii) execute, acknowledge, deliver and record and/or file such further instruments (including, without limitation, further deeds of trust, security agreements, financing statements, continuation statements and assignments of rents or leases) and perform such further acts and provide such further assurances as maybe necessary, desirable or proper, in Holder' opinion, to carry out more effectively the purposes of this Deed of Trust and such other instruments and to subject to the liens and security interests hereof and thereof any property intended by the terms hereof or thereof to be covered hereby or thereby, including specifically, but without limitation, any renewals, additions, substitutions, replacements, or appurtenances to the Property; and (iii) execute, acknowledge, deliver, procure, and file and/or record any document or instrument (including specifically, but without limitation, any financing statement) deemed advisable by Holder to protect the liens and the security interests herein granted against the rights or interests of third persons, and Grantor will pay all costs connected with any of the foregoing;

(j)　Grantor shall promptly furnish to Holder (1) within thirty (30) days of its respective filing date annual tax returns of Grantor prepared by a Certified Public Accountant for Grantor, and (2) within 90 days after the end of its tax year, annual financial statements (including income statements, balance sheets, statements itemizing income and expense and such other financial statements as Holder may request) of Grantor prepared by Grantor; all such tax returns and financial statements delivered to Holder hereunder to be in detail reasonably satisfactory to Holder, and

without limiting the foregoing obligations of Grantor, Grantor shall allow Holder from time to time to inspect all records relating thereto and to make and take away copies of such records;

(k)     Continuously maintain Grantor's existence and right to do business in Texas;

(l)     At any time any law shall be enacted imposing or authorizing the imposition of any tax upon this Deed of Trust, or upon any rights, titles, liens or security interests created hereby, or upon the Obligations or any part thereof, immediately pay all such taxes; provided that, if such law as enacted makes it unlawful for Grantor to pay such tax, Grantor shall not pay nor be obligated to pay such tax, and in the alternative, Grantor may, in the event of the enactment of such a law, and must, if it is unlawful for Grantor to pay such taxes, prepay the Obligations in full within 60 days after demand therefor by Holder;

(m)    At any time and from time to time, furnish promptly upon the request of Holder, a written statement or affidavit, in form satisfactory to Holder, stating the unpaid balance of the Obligations and that there are no offsets or defenses against full payment of the Obligations and the terms hereof, or, if there are any such offsets or defenses, specifying them;

(n)    Not cause or permit the Accessories or any part thereof, to be removed from the county and state where the Land is located, except items of the Accessories which have become obsolete or worn beyond practical use and which have been replaced by adequate substitutes having a value equal to or greater than the replaced items when new;

(o)    Not seek or acquiesce in a zoning reclassification of any portion of the Property or grant any easement, dedication, plat or restriction (or allow any easement to become enforceable by prescription) covering any portion of the Property, without Holder' prior written consent;

(p)    Not, without the prior written consent of Holder, permit any drilling or exploration for or extraction, removal or production of any mineral, natural element, compound or substance from the surface or subsurface of the Land regardless of the depth thereof or the method of mining or extraction thereof;

(q)    Subject to the provisions in this Deed of Trust, pay on demand all reasonable and bona fide out-of-pocket costs, fees and expenses and other expenditures, including, but not limited to, reasonable attorneys' fees and expenses, paid or incurred by Holder or Trustee to third parties incident to this Deed of Trust or any other Loan Document (including, but not limited to, reasonable attorneys' fees and expenses in connection with the negotiation, preparation and execution hereof and of any other Loan Document and any amendment hereto or thereto, any release hereof, any consent, approval or waiver hereunder or under any other Loan Document, the making of any advance under the Note, and any suit to which Holder or Trustee is a party involving this Deed of Trust or the Property) or incident to the enforcement of the Obligations or the exercise of any right or remedy of Holder under any Loan Document;

(r)    If at any time the issuer of the Mortgagee Policy of Title Insurance (the "Original Policy") insuring the lien of this Deed of Trust becomes insolvent, or unable to satisfy its debts as they become due in the ordinary course of business, Grantor shall purchase, at its sole expense, another Mortgagee Policy of Title Insurance, in the amount of the Note, issued by a title insurer acceptable to Holder, and insuring this Deed of Trust as a first lien against the Property subject only to the Permitted Exceptions and the other exceptions contained in the Original Policy; and

(s)    Maintain the first (1st) lien priority of this Deed of Trust and not permit or grant any lien or security interest in the Property which would be superior in lien priority to the first (1st) lien priority of this Deed of Trust, including but not limited to a voluntary encumbrance of any lien or security interest for the payment of ad valorem taxes by a third (3rd) party payor and the assignment of lien or security interest for those ad valorem taxes to the third (3rd) party payor.

## ARTICLE 3

### RESPECTING DEFAULTS AND REMEDIES OF HOLDER

**Section 3.1    Default.** The term "default", as used herein, shall mean the occurrence of any one or more of the following events:

(a)    the failure of Grantor to (1) pay any sum of money due under any of the Loan Documents or (2) pay other debt to Holder when due; or

(b)    the failure of Grantor to punctually and properly perform, observe or comply with any covenant, agreement, undertaking or condition contained herein, in Note I and/or Note II, this Deed of Trust or in any other Loan Document, or any renewal, modification, rearrangement, amendment or extension thereof; or

(c)    a default under and pursuant to any other note and/or Deed of Trust, mortgage or security agreement (irrespective of the priority to the Loan Documents) which covers or affects any part of the Property; or

(d)    the execution by Grantor of an assignment for the benefit of creditors or the admission in writing by Grantor of Grantor's inability to pay, or Grantor's failure to pay, debts generally as the debts become due; or

(e)    the levy against the Property or any part thereof, of any execution, attachment, sequestration or other writ which is not vacated within 30 days after the levy; or

(f)    the appointment of a receiver, trustee or custodian of Grantor, or of the Property or any part thereof, which receiver, trustee or custodian is not discharged within 60 days after the appointment; or

(g)    the filing by Grantor as a debtor of a petition, case, proceeding or other action pursuant to, or the voluntary seeking of the benefit or benefits of, Title 11 of the United States Code, as now or hereafter in effect, or any other law, domestic or foreign, as now or hereafter in effect relating to bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement, or composition or extension or adjustment of debts, or similar laws affecting the rights of creditors (Title 11 of the United States Code and such other laws being herein referred to as "Debtor Relief Laws"), or the taking of any action in furtherance thereof; or

(h)    the filing by Grantor of either a petition, complaint, answer or other instrument which seeks to effect a suspension of, or which has the effect of suspending any of the rights or powers of Holder or Trustee granted in the Note, herein or in any Loan Document; or

(i)    the filing of a petition, case, proceeding or other action against Grantor as a debtor under any Debtor Relief Law or seeking appointment of a receiver, trustee, custodian or liquidator of Grantor or of the Property, or any part thereof, or of any significant portion of Grantor's other property, and (i) Grantor admits, acquiesces in or fails to contest diligently the material allegations thereof, or (ii) the petition, case, proceeding or other action results in the entry of an order for relief or order granting the relief sought against Grantor, or (iii) the petition, case, proceeding or other action is not permanently dismissed or discharged on or before the earlier of trial thereon or 30 days next following the date of filing; or

(j)    the discovery by Holder of information establishing that any representation or warranty made by Grantor herein or in any Loan Document is false, misleading, erroneous or breached in any material respect; or

(k)    abandonment by Grantor of all or any portion of the Property; or

(l)    death, dissolution or liquidation of the Grantor or termination or forfeiture of Grantor's right to do business; or

(m)     the failure of Grantor to immediately pay any final money judgment against Grantor at least 30 days before any assets of Grantor or any guarantor or surety of Grantor may be sold to satisfy such judgment; or

(n)     the occurrence of any event referred to in Subsections (d), (f), (g), (h), (i), (j), (l) and (m) above with respect to any guarantor or other person or entity obligated in any manner to pay or perform the Obligations or any part thereof (as if such guarantor or other person or entity were "Grantor" in such Subsections); or

(o)     the condemnation, or other taking, of all or part of the Property.

**Section 3.2     Holder' Remedies Upon Default.** Upon a default, Holder may, at Holder' option, do any one or more of the following:

(a)     If Grantor has failed to keep or perform any covenant whatsoever contained in this Deed of Trust, Holder may, but shall not be obligated to any person to do so, perform or attempt to perform said covenant, and any payment made or expense incurred in the performance or attempted performance of any such covenant shall be and become a part of the Obligations, and Grantor promises, upon demand, to pay to Holder, at the place where the Note is payable, all sums so advanced or paid by Holder, with interest from the date when paid or incurred by Holder at the rate provided in the Note for past-due payments. No such payment by Holder shall constitute a waiver of any default. In addition to the liens and security interests hereof, Holder shall be subrogated to all rights, titles, liens and security interests securing the payment of any debt, claim, tax or assessment for the payment of which Holder may make an advance, or which Holder may pay.

(b)     Holder may, without notice, demand, notice of intent to demand, notice of demand, presentment, notice of nonpayment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration or any other notice or any other action, all of which are hereby waived by Grantor and all other parties obligated in any manner whatsoever on the Obligations, declare the entire unpaid balance of the Obligations immediately due and payable, and upon such declaration, the entire unpaid balance of the Obligations shall be immediately due and payable.

(c)     Holder may request Trustee to proceed with foreclosure, and in such event, Trustee is hereby authorized and empowered and it shall be Trustee's special duty, upon such request of Holder, to sell the Property or any part thereof, with or without having taken possession of same, to the highest bidder or bidders for cash in the area of the Courthouse designated by the Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place of the county in which the Land or any part thereof to be sold is located, or if the Land is located in more than one county, the sale may be made in any county in the State of Texas in which any part of the Land to be sold is located. Any such sale shall be a public sale at auction, held between the hours of ten o'clock A.M. and four o'clock P.M. on the first Tuesday in any month, after a written notice has been posted in the area of the Courthouse designated by the Commissioners Court pursuant to the Texas Property Code as the place foreclosure notices are to be posted in the county in which the Land or any part thereof to be sold is located, or, if the Land to be sold is located in more than one county, in each such county, and by filing, or causing to be filed, a copy of the notice(s) so posted in the office of the county clerk of each such county, which notice(s) shall designate the county where the Property or any part thereof will be sold, and which notice(s) shall be posted and filed at least 21 days before the date of the sale. At least 21 days before the date of sale, Holder shall serve written notice of the proposed sale by certified mail on each debtor obligated to pay the Obligations according to the records of Holder. Service of such notice shall be completed when the notice (enclosed in a wrapper, addressed to such debtor at the debtor's last known address as shown by the records of Holder with postage prepaid) is deposited in the United States Mail, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that service was completed shall be prima facie evidence of the fact of service. Any notice that is to be given by certified mail to any debtor other than Grantor may, if no address for such other debtor is shown by the records of Holder, be addressed to such other debtor at the most recent address of Grantor as shown by the records of Holder. Notwithstanding, but without limiting the foregoing provisions of this paragraph, notice of such sale given in accordance with the requirements of the applicable laws of the State of Texas in effect at the time such notice is given shall also constitute sufficient notice of such sale. After any such sale, Trustee shall make good and sufficient deeds and assignments to the purchaser or

purchasers thereunder in the name of Grantor, conveying the Property or any part thereof so sold to the purchaser or purchasers with general warranty of title by Grantor. Sale of a part of the Property shall not exhaust the power of sale, but sales may be made from time to time until the Obligations is paid and performed in full. It shall not be necessary to have present or to exhibit at any such sale any of the Accessories. In addition to the rights and powers of sale granted under the preceding provisions of this Subsection, if default is made in the payment of any installment of the Obligations, Holder may, at Holder' option, at once or at any time thereafter while any matured installment remains unpaid, without declaring the entire Obligations to be due and payable, orally or in writing direct Trustee to enforce this trust and to sell the Property subject to such unmatured indebtedness and the liens and security interests securing Holder' payment, in the same manner, all as provided in the preceding provisions of this Subsection. After such sale, Trustee shall make due conveyance to the purchaser or purchasers. Sales made without maturing the Obligations may be made hereunder whenever there is a default in the payment of any installment of the Obligations, without exhausting the power of sale granted hereby, and without affecting in any way the power of sale granted under this Subsection, the unmatured balance of the Obligations (except as to any proceeds of any sale which Holder may apply as prepayment of the Obligations) or the liens and security interest securing payment of the Obligations. It is intended by each of the foregoing provisions of this Subsection that Trustee may, after any request or direction by Holder, sell not only the Land and the Improvements, but also the Accessories and other interests constituting a part of the Property or any part thereof, along with the Land and the Improvements or any part thereof, as a unit and as a part of a single sale, or may sell any part of the Property separately from the remainder of the Property. It is agreed that, in any deed or deeds given by Trustee, any and all statements of fact or other recitals therein made as to the identity of Holder, or as to the occurrence or existence of any default, or as to the acceleration of the maturity of the Obligations, or as to the request to sell, notice of sale, time, place, terms and manner of sale, and receipt, distribution and application of the money realized therefrom, or as to the due and proper appointment of a substitute trustee, and, without being limited by the foregoing, as to any other act or thing having been duly done by or on behalf of Holder or by or on behalf of Trustee, shall be taken by all courts of law and equity as prima facie evidence that the said statements or recitals state facts and are without further question to be so accepted, and Grantor does hereby ratify and confirm any and all acts that Trustee may lawfully do by virtue hereof. In the event of the resignation or death of Trustee, or Trustee's removal from the county of residence stated on the first page hereof, or Trustee's failure, refusal, or inability, for any reason, to make any such sale or to perform any of the trusts herein declared, or, at the option of Holder with or without cause, either prior to or after a default hereunder, Holder may appoint, in writing but without the necessity of recordation, notice or any other formality, a substitute trustee who shall thereupon succeed to all the estates, titles, rights, powers and trusts herein granted to and vested in Trustee. If Holder is a corporation or an association, such appointment may be made on behalf of such Holder by any any authorized officer or agent of Holder. In the event of the resignation or death of any such substitute trustee, or such substitute trustee's failure, refusal or inability to make any such sale or perform such trusts, or, at the option of Holder, with or without cause, successive substitute trustees may thereafter, from time to time, be appointed in the same manner. Wherever herein the word "Trustee" is used, the same shall mean the duly appointed trustee or substitute trustee hereunder at the time in question. Notwithstanding anything contained in this Deed of Trust to the contrary, Holder covenant, warrant and agree to the following:

(d) Holder may, or Trustee may upon written request of Holder, proceed by suit or suits, at law or in equity, to enforce the payment and performance of the Obligations in accordance with the terms hereof and of the Note or the Loan Documents, to foreclose the liens and security interests of this Deed of Trust as against all or any part of the Property, and to have all or any part of the Property sold under the judgment or decree of a court of competent jurisdiction.

(e) Holder, as a matter of right and without regard to the sufficiency of the security, and without any showing of insolvency, fraud or mismanagement on the part of Grantor, and without the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, shall be entitled to the appointment of a receiver or receivers of the Property or any part thereof, and of the income, rents, issues and profits thereof.

(f) Holder may enter upon the Land, take possession of the Property and remove the Accessories or any part thereof, with or without judicial process, and, in connection therewith, without any responsibility or liability on the part of Holder, take possession of any property located

on or in the Property which is not a part of the Property and hold or store such property at Grantor's expense.

(g)    Holder may require Grantor to assemble the Accessories or any part thereof, and make them available to Holder at a place to be designated by Holder which is reasonably convenient to Grantor and Holder.

(h)    After notification, if any, hereafter provided in this Subsection, Holder may sell, lease or otherwise dispose of, at the office of Holder or on the Land or elsewhere, as chosen by Holder, all or any part of the Accessories, in their then condition, or following any commercially reasonable preparation or processing, and each Sale (as used in this Subsection, the term "Sale" means any sale, lease, or other disposition made pursuant to this Subsection) may be as a unit or in parcels, by public or private proceedings, and by way of one or more contracts, and, at any Sale it shall not be necessary to exhibit the Accessories or part thereof being sold.  The Sale of any part of the Accessories shall not exhaust Holder' power of sale, but Sales may be made from time to time until the Obligations is paid and performed in full.  Reasonable notification of the time and place of any public Sale pursuant to this Subsection, or reasonable notification of the time after which any private Sale is to be made pursuant to this Subsection, shall be sent to Grantor and to any other person entitled under the Code (as hereinafter defined) to notice; provided that if the Accessories or part thereof being sold are perishable, or threaten to decline rapidly in value, or are of a type customarily sold on a recognized market, Holder may sell, lease or otherwise dispose of the Accessories, or part thereof, without notification, advertisement or other notice of any kind.  It is agreed that notice sent or given not less than ten calendar days prior to the taking of the action to which the notice relates, is reasonable notification and notice for the purposes of this Subsection.

(i)    Holder may surrender the insurance policies (or any part thereof) maintained pursuant to the terms of this Deed of Trust, and receive and apply the unearned premiums as a credit on the Obligations and, in connection therewith, Grantor hereby appoints Holder as agent and attorney-in-fact for Grantor to collect such premiums.

(j)    Holder may retain the Accessories in satisfaction of the Obligations whenever the circumstances are such that Holder is entitled to do so under the Code.

(k)    Holder may buy the Property or any part thereof at any public sale or judicial sale.

(l)    Holder may buy the Accessories or any part thereof at any private sale, if the Accessories or part thereof being sold are a type customarily sold in a recognized market or a type subject to widely distributed standard price quotations.

(m)    Holder shall have and may exercise any and all other rights and remedies which Holder may have at law or in equity, or by virtue of any Loan Document, or under the Code, or otherwise.

(n)    Holder may apply the reserve for taxes, assessments and insurance premiums, if any, required by the provisions of this Deed of Trust, toward payment of the Obligations.

Section 3.3    Holder as Purchaser.  If Holder is the purchaser of the Property or any part thereof, at any sale thereof, whether such sale be under the power of sale hereinabove vested in Trustee or upon any other foreclosure of the liens and security interests hereof, or otherwise, Holder shall, upon any such purchase, acquire good title to the Property so purchased, free of the liens and security interests hereof, unless Holder elects that no merger occur.

Section 3.4    Other Rights of Holder.  Should any part of the Property come into the possession of Holder, whether before or after default, Holder may use or operate the Property for the purpose of preserving it or its value, pursuant to the order of a court of appropriate jurisdiction or in accordance with any other rights held by Holder in respect of the Property.  Grantor covenants promptly to reimburse and pay to Holder on demand, at the place where the Note is payable, the amount of all reasonable expenses (including the cost of any insurance, taxes or other charges) incurred by Holder in connection with Holder' custody, preservation, use or operation of the Property, together with interest thereon from the date incurred by Holder at the rate provided in the

Note for past due principal, and all such expenses, costs, taxes, interest and other charges shall be and become a part of the Obligations. It is agreed, however, that the risk of loss or damage to the Property is on Grantor, and Holder shall have no liability whatsoever for decline in value of the Property, for failure to obtain or maintain insurance, or for failure to determine whether insurance in force is adequate as to amount or as to the risks insured.

Section 3.5    Possession After Foreclosure. If the liens or security interests hereof shall be foreclosed by power of Trustee's sale, by judicial action or otherwise, the purchaser at any such sale shall receive, as an incident to Trustee's ownership, immediate possession of the property purchased, and if Grantor or Grantor's successors shall hold possession of said property or any part thereof, subsequent to foreclosure, Grantor and Grantor's successors shall be considered as tenants at sufferance of the purchaser at foreclosure sale (without limitation of other rights or remedies, at a reasonable rental per day, due and payable daily, based upon the value of the portion of the Property so occupied), and anyone occupying such portion of the Property after demand is made for possession thereof shall be guilty of forcible detainer and shall be subject to eviction and removal, forcible or otherwise, with or without process of law, and all damages by reason thereof are hereby expressly waived.

Section 3.6    Application of Proceeds. The proceeds from any sale, lease or other disposition made pursuant to this Article, or the proceeds from the surrender of any insurance policies pursuant to the terms of this Deed of Trust, or any rental collected by Holder from the Property, or the reserve for taxes, assessments and insurance premiums, if any, required by the provisions of this Deed of Trust or sums received pursuant to Section 5.1 hereof, or proceeds from insurance which Holder elects to apply to the Obligations pursuant to Section 5.2 hereof, shall be applied by Trustee, or by Holder, as the case may be, as follows: first, to the payment of all expenses of advertising, selling and conveying the Property or part thereof, including reasonable attorneys' fees and a reasonable commission to Trustee not to exceed five percent of the proceeds of the sale; second, to accrued interest on the Obligations; third, to principal on the matured portion of the Obligations; fourth, to prepayment of the unmatured portion, if any, of the Obligations applied to installments of principal in the inverse order of maturity; and fifth, the balance, if any, remaining after the full and final payment and performance of the Obligations to the person or persons legally entitled thereto.

Section 3.7    Abandonment of Sale. In the event a foreclosure hereunder is commenced by Trustee in accordance with Subsection 3.2(e) hereof, Holder may, at any time before the sale, direct Trustee to abandon the sale, and may then institute suit for the collection of the Note and for the foreclosure of the liens and security interests hereof. If Holder should institute a suit for the collection of the Note and for a foreclosure of the liens and security interests hereof, Holder may, at any time before the entry of a final judgment in said suit, dismiss the same and require Trustee to sell the Property or any part thereof in accordance with the provisions of this Deed of Trust.

Section 3.8    Payment of Fees. If the Note or any other part of the Obligations shall be collected or enforced by legal proceedings, whether through a probate or bankruptcy court or otherwise, or shall be placed in the hands of an attorney for collection after maturity, whether matured by the expiration of time or by an option given to the beneficiary to mature same, or if Holder becomes a party to any suit where this Deed of Trust or the Property or any part thereof is involved, Grantor agrees to pay Holder' attorneys' and collection fees, and such fees shall be and become a part of the Obligations.

Section 3.9    Indemnification of Trustee. Except for gross negligence or willful misconduct, Trustee shall not be liable for any act or omission or error of judgment. Trustee may rely on any document believed by Trustee in good faith to be genuine. All money received by Trustee shall, until used or applied as herein provided, be held in trust, but need not be segregated (except to the extent required by law), and Trustee shall not be liable for interest thereon. Grantor shall indemnify Trustee against all liability and expenses which Trustee may incur in the performance of Trustee's duties hereunder.

apply any proceeds so collected either to the restoration of the Property or to the payment of the Obligations, whether or not the Obligations has matured.

Section 5.3    Right to Accelerate Upon Transfer.    If Grantor shall sell, convey, assign or transfer all or any part of the Property or any interest therein, or if Grantor or any other person or entity shall sell, convey, assign or transfer any beneficial interest in Grantor, Holder may, at Holder' option, without demand, notice of intent to demand, notice of demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by Grantor and all other parties obligated in any manner on the Obligations, declare the Obligations to be immediately due and payable, which option may be exercised at any time following such sale, conveyance, assignment or transfer, and upon such declaration the entire unpaid balance of the Obligations shall be immediately due and payable. Holder may, in Holder' sole discretion and at Grantor's request, decide not to exercise said option, in which event Holder' forbearance may be predicated on such terms and conditions as Holder may, in Holder' sole discretion require, including, but not limited to, Holder' approval of the transferee's creditworthiness and management ability, the execution and delivery to Holder by transferee prior to the sale, transfer, assignment or conveyance of a written assumption agreement containing such terms as Holder may require, including, but not limited to, a payment of a part of the principal amount of the Obligations, an increase in the rate of interest payable on the Obligations, the payment of an assumption fee, a modification of the term of the Obligations and such other terms as Holder may require, or Holder may require any of such modifications of the terms of the Obligations without requiring an assumption thereof by the transferee. Should the Property be sold, traded, transferred, assigned, exchanged or otherwise disposed of without the prior written consent of Holder and should payment of any portion of the Obligations thereafter be accepted by Holder, such acceptance shall not be deemed a waiver of the requirement of Holder' consent in writing thereto or with respect to any other sale, trade, transfer, assignment, exchange or other disposition.

Section 5.4    Subordinate Financing.    If Grantor, without the prior written consent of Holder, executes or delivers any pledge, security agreement, mortgage or deed of trust covering all or any portion of the Property (hereinafter called "Subordinate Mortgage"), Holder may, at Holder' option, which option may be exercised at any time following such pledge, security agreement, mortgage or deed of trust, without demand, notice of intent to demand, notice of demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by Grantor and all other parties obligated in any manner on the Obligations, declare the Obligations to be immediately due and payable. In the event of consent by Holder to the granting of a Subordinate Mortgage, or in the event the above-described right of Holder to declare the Obligations to be immediately due and payable upon the granting of a Subordinate Mortgage without the prior written consent of Holder is determined by a court of competent jurisdiction to be unenforceable under the provisions of any applicable law, Grantor will not execute or deliver any Subordinate Mortgage unless (i) it shall contain express covenants to the effect: (a) that the Subordinate Mortgage is in all respects unconditionally subject and subordinate to the lien and security interest evidenced by this Deed of Trust and each term and provision hereof; (b) that if any action or proceeding shall be instituted to foreclose the Subordinate Mortgage (regardless of whether the same is a judicial proceeding or pursuant to a power of sale contained therein), no tenant of any portion of the Property will be named as a party defendant, nor will any action be taken with respect to the Property which would terminate any occupancy or tenancy of the Property without the prior written consent of Holder; (c) that the rents and profits, if collected through a receiver or by the holder of the Subordinate Mortgage, shall be applied first to the obligations secured by this Deed of Trust, including principal and interest due and owing on or to become due and owing on the Note and the other indebtedness secured hereby, and then to the payment of maintenance, operating charges, taxes, assessments, and disbursements incurred in connection with the ownership, operation and maintenance of the Property; and (d) that if any action or proceeding shall be brought to foreclose the Subordinate Mortgage (regardless of whether the same is a judicial proceeding or pursuant to a power of sale contained therein), written notice of the commencement thereof will be given to Holder contemporaneously with the commencement of such action or proceeding; and (ii) a copy thereof shall have been delivered to Holder not less than ten days prior to the date of the execution of such Subordinate Mortgage.

Section 5.5    Contest of Certain Claims.    Notwithstanding the provisions of Subsections 2.2(b) or 2.2(h) hereof, Grantor shall not be in default for failure to pay or discharge any tax,

assessment, or mechanic's or materialman's lien asserted against the Property if, and so long as, (a) Grantor shall have notified Holder of same within five days of obtaining knowledge thereof; (b) Grantor shall diligently and in good faith contest the same by appropriate legal proceedings which shall operate to prevent the enforcement or collection of the same and the sale of the Property or any part thereof, to satisfy the same; (c) Grantor shall have furnished to Holder a cash deposit, or an indemnity bond satisfactory to Holder with a surety satisfactory to Holder, in the amount of the tax, assessment or mechanic's or materialman's lien claim, plus a reasonable additional sum to pay all costs, interest and penalties that may be imposed or incurred in connection therewith, to assure payment of the matters under contest and to prevent any sale or forfeiture of the Property or any part thereof; (d) Grantor shall promptly upon final determination thereof pay the amount of any such tax, assessment or claim so determined, together with all costs, interest and penalties which may be payable in connection therewith; (e) the failure to pay the tax, assessment or mechanic's or materialman's lien claim does not constitute a default under any other deed of trust, mortgage or security interest covering or affecting any part of the Property; and (f) notwithstanding the foregoing, Grantor shall immediately upon request of Holder pay (and if Grantor shall fail so to do, Holder may, but shall not be required to, pay or cause to be discharged or bonded against) any such tax, assessment or claim notwithstanding such contest, if in the reasonable opinion of Holder the Property shall be in jeopardy or in danger of being forfeited or foreclosed. Holder may pay over any such cash deposit or part thereof to the claimant entitled thereto at any time when, in the judgment of Holder, the entitlement of such claimant is established.

## ARTICLE 6

## LEASES AND ASSIGNMENT OF RENTAL

Section 6.1 **The Texas Assignment of Rents Act.** This Article is intended to comply with the Texas Assignment of Rents Act, now codified in Chapter 64 of the Property Code (hereinafter referred to as "TARA"). Should there exist any conflict with TARA and this Article the provisions of TARA shall prevail.

Section 6.2 **Definitions.** As used in this Deed of Trust: (a) "Lease" means any lease, sublease or other agreement under the terms of which any person has or acquires any right to occupy or use the Property, or any part thereof, or any interest therein, including all extended or renewal terms thereof and all modifications or amendments thereto and replacements therefor; (b) "Lessee" means the lessee, sublessee, tenant or other person having the right to occupy or use a part of the Property under the Lease; and (c) "Rental" means the rents, royalties and other consideration payable to Grantor by the Lessee under the terms of a lease.

Section 6.3 **Assignment of Rental.** Grantor, as additional security, hereby collaterally assigns to Holder all Rental payable under each Lease now or at any time hereafter existing, such assignment being upon the following terms: (a) from and after receipt from Holder of notice of default to hold all Rental so paid in trust for the use and benefit of Holder; (b) upon receipt from Holder of notice that a default exists, each Lessee is hereby authorized and directed to pay directly to Holder all Rental thereafter accruing, and a receipt for such payment from Holder shall be a release of such Lessee to the extent of all amounts so paid; (c) Rental so received by Holder shall be applied by Holder, first, to the expenses, if any, of collection and then in accordance with Section 3.6 hereof; (d) without impairing its rights hereunder, Holder may, at its option, at any time and from time to time, release to Grantor Rental so received by Holder, or any part thereof; (e) Holder shall not be liable for its failure to collect, or its failure to exercise diligence in the collection of Rental, but shall be accountable only for Rental that it shall actually receive; (f) this assignment shall terminate upon the release of this Deed of Trust but no Lessee shall be required to take notice of termination until a copy of such release shall have been delivered to such Lessee. As between Holder and Grantor or any person claiming through or under Grantor, other than a Lessee who has not received notice of default pursuant to this subsection. It shall never be necessary for Holder to institute legal proceedings of any kind whatsoever to enforce the provisions of this Article.

Section 6.4 **No Subordination.** Nothing in this Article 6 shall ever be construed as subordinating this Deed of Trust to any lease; provided, however, that any proceeding by Holder to foreclose this Deed of Trust, or any action by way of its entry into possession after default, shall not operate to terminate any Lease which has been approved by Holder, and Holder will not cause any

Lessee under any such approved Lease to be disturbed in his possession and enjoyment of the leased premises so long as such Lessee shall continue to fully and promptly perform all of the terms, covenants and provisions of his Lease.

Section 6.5    Grantor's Obligations.  Grantor shall: (a) upon demand by Holder, assign to Holder, by separate instrument in form and substance satisfactory to Holder, the Rental payable under any or all Leases, including but not limited to, any Lease which is now in existence or which may be executed after the date hereof; (b) neither accept from any Lessee, nor permit any Lessee to pay, Rental for more than one month in advance not including a customary security deposit; (c) comply, as lessor, with the terms and provisions of each Lease; (d) not waive, excuse, release or condone any nonperformance of any covenants of any Lessee; (e) give to Holder duplicate notice of each default by each Lessee; and (f) cause each Lessee to agree (and each Lessee under each Lease executed after the date hereof does so agree) to give to Holder written notice of each and every default by Grantor under his Lease and not to exercise any remedies under such Lease unless Holder fails to cure such default within ten days, or within such longer period as may be reasonably necessary if such default cannot be cured within ten days, after Holder has received such notice, provided that Holder shall never have any obligation or duty to cure any such default.

Section 6.6    Holder' Collection of Rental.  In the event Holder ever collects Rental through an agent, Holder shall be entitled to pay its agent as compensation for collecting such Rental, from sums so collected, a sum not to exceed five percent of the Rental so collected.

Section 6.7    Assignment of Rents and Management.  If Grantor has executed for Holder' benefit an Assignment Of Rents, Leases, And Other Benefits (the "Assignment of Rents") and there is a conflict between the terms and provisions of this Article 6 and the terms and provisions of such Assignment of Rents, the terms and provisions of the Assignment of Rents shall be controlling.

## ARTICLE 7

## MISCELLANEOUS

Section 7.1    Release.  If the Obligations is paid in full in accordance with the terms of this Deed of Trust, the Note and the Loan Documents, and if Grantor shall well and truly perform all of Grantor's covenants contained herein, then this conveyance shall become null and void and be released at Grantor's request and expense and Holder shall have no further obligation to make advances under and pursuant to the provisions hereunder or in the Note.

Section 7.2    Rights Cumulative.  Holder shall have all rights, remedies and recourses granted in the Loan Documents and available at law or in equity (including, without limitation, those granted by the Code and applicable to the Property or any portion thereof), and the same (a) shall be cumulative and concurrent, (b) may be pursued separated, successively or concurrently against Grantor or others obligated for the Obligations or any part thereof, or against any one or more of them, or against the Property, at the sole discretion of Holder, (c) may be exercised as often as occasion therefor shall arise, it being agreed by Grantor that the exercise, discontinuance of the exercise of or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, remedy or recourse, and (d) are intended to be, and shall be, nonexclusive. All rights and remedies of Holder hereunder and under the Loan Documents shall extend to any period after the initiation of foreclosure proceedings, judicial or otherwise, with respect to the Property.

Section 7.3    Waiver.  Any and all covenants in this Deed of Trust may, from time to time, by instrument in writing signed by Holder and delivered to Grantor, be waived to such extent and in such manner as Holder may desire, but no such waiver shall ever affect or impair Holder' rights, remedies, powers, privileges, liens, titles and security interests hereunder except to the extent so specifically stated in such written instrument. No waiver of any default on the part of Grantor or a breach of any of the provisions of this Deed of Trust or of any Loan Document shall be considered a waiver of any other or subsequent default or breach, and no delay or omission in exercising or enforcing the rights and powers herein granted shall be construed as a waiver of such rights and powers, and likewise no exercise or enforcement of any rights or powers hereunder shall be held to exhaust such rights and powers, and every such right and power may be exercised from time to time.

No notice to or demand on Grantor in any case shall of itself entitle Grantor to any other or further notice or demand in similar or other circumstances. The granting of any consent or approval by Holder shall be limited to the specific instance described in the writing signed by Holder and shall not waive or exhaust the requirement of consent or approval in any other instance. Except as otherwise specified herein, in any instance hereunder where Holder' approval or consent is required or the exercise of Holder' judgment is required, the granting or denial of such approval or consent and the exercise of such judgment shall be within the sole discretion of Holder, and Holder shall not, for any reason or to any extent, be required to grant such approval or consent or exercise such judgment in any particular manner regardless of the reasonableness of the request or of Holder' judgment.

Section 7.4    Payments. Remittances in payment of any part of the Obligations other than in the required amount in funds immediately available at the place where the Note is payable shall not, regardless of any receipt or credit issued therefor, constitute payment until the required amount is actually received by Holder in funds immediately available at the place where the Note is payable (or such other place as Holder, in Holder' sole discretion, may have established by delivery of written notice thereof to Grantor) and shall be made and accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Holder at any time of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be a default.

Section 7.5    Exceptions to Covenants. Grantor shall not be deemed to be permitted to take any action or to fail to take any action, notwithstanding (a) that the action or omission may be permitted as an exception to any of the covenants or conditions contained herein, or (b) that obligations of Grantor or rights of Holder are provided herein with respect to the action or omission (or the result thereof), if the action or omission would result in the breach of any other covenant or condition contained herein or in any of the Loan Documents, nor shall Holder be deemed to have consented to any such act or omission if the same would provide cause for acceleration of the Obligations.

Section 7.6    Change of Security. Any part of the Property may be released, regardless of consideration, by Holder from time to time without impairing, subordinating or affecting in any way the lien, security interest and other rights hereof against the remainder. The lien, security interest and other rights granted hereby shall not be affected by any other security taken for the Obligations or any part thereof. The taking of additional security, or the extension, renewal or rearrangement of the Obligations or any part thereof, shall not release or impair the lien, security interest and other rights granted hereby, or affect the liability of any endorser or guarantor or improve the right of any junior lienholder; and this Deed of Trust, as well as any instrument given to secure any renewal, extension or rearrangement of the Obligations or any part thereof, shall be and remain a first and prior lien, except as otherwise provided herein, on all of the Property not expressly released until the Obligations is fully paid and performed.

Section 7.7    Controlling Agreement. The parties hereto intend to conform strictly to the applicable usury laws. All agreements between Grantor t and any other party liable for any part of the Obligations (and Holder whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no event whatsoever, whether by reason of acceleration of the maturity of the Obligations or otherwise, shall the interest contracted for, charged or received by Holder hereunder or otherwise exceed the maximum amount permissible under applicable law. If from any circumstances whatsoever interest would otherwise be payable to Holder in excess of the maximum lawful amount, the interest payable to Holder shall be reduced automatically to the maximum amount permitted under applicable law. If Holder shall ever receive anything of value deemed interest under applicable law which would apart from this provision be in excess of the maximum lawful amount, the amount which would have been excessive interest shall be applied to the reduction of the principal amount owing on the Obligations in inverse order of maturity and not to the payment of interest, or if such amount which would have been excessive interest exceeds the unpaid principal balance of the Obligations, such excess shall be refunded to Grantor, or to the maker of the Note or other person as may be entitled thereto. All interest paid or agreed to be paid to Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full stated term, including any renewal or extension, of such indebtedness so that the

amount of interest on account of such indebtedness does not exceed the maximum permitted by applicable law. The terms and provisions of this Section shall control and supersede every other provision of all existing and future agreements between Grantor, the maker of the Note or other evidence or indebtedness if other than Grantor, and Holder.

Section 7.8    Effect of Transfer on Grantor's Liability.    If the ownership (legal or beneficial) of the Property or any part thereof becomes vested in a person other than the Grantor, or in the event of a change in ownership (legal or beneficial) of any Grantor other than an individual, Holder may, without notice to or consent of Grantor or Grantor's successors, deal with such successor or successors in interest with reference to this Deed of Trust and the Obligations either by way of forbearance on the part of Holder, or extension of time or payment of the Obligations, or release of all or any part of the Property or any other property securing payment of the Obligations, or otherwise, without in any way modifying or affecting Holder' rights and liens hereunder or the liability of Grantor or any other party liable for payment of the Obligations, in whole or in part.

Section 7.9    Waiver of Right to Marshal.    Grantor hereby waives all rights of marshaling in event of any foreclosure of the liens and security interests hereby created.

Section 7.10    Subrogation.    To the extent that proceeds of the Obligations are used to renew, extend or pay any outstanding debt or to perform any obligation, such proceeds have been advanced by Holder at Grantor's request, and Holder shall be subrogated to all liens, security interests, rights, priorities, powers, title, equities and interests owned or held by any owner or holder of such outstanding debt or obligation, however remote, irrespective of whether the same are released of record, and all of the same are recognized as valid and subsisting and are renewed, continued and preserved in force to secure the Obligations; provided, however, that if and to the extent Holder desires in each case, the terms and provisions hereof and of the other Loan Documents shall govern the rights and remedies of Holder and shall supersede the terms, provisions, rights and remedies under any lien, security interest, charge or other encumbrance to which Holder is subrogated hereunder.

Section 7.11    Covenant to Perform.    Grantor and each subsequent owner of the Property or any part thereof, covenants and agrees that Grantor or any subsequent owner will perform or cause to be performed, each and every condition, term, provision and covenant of this Deed of Trust, except that Grantor shall have no duty to pay the indebtedness evidenced by the Note except in accordance with the terms of the Note and all renewals and extensions thereof, and this Deed of Trust or in accordance with the terms of the transfer to Grantor or any subsequent owner.

Section 7.12    Notices.    Except as otherwise provided herein, all notices, demands, requests and other communications required or permitted hereunder shall be in writing, and shall be deemed to be given and delivered when received, or if earlier and regardless of whether or not actually received, upon deposit in a regularly maintained receptacle for the United States mail, registered or certified, postage fully prepaid, return receipt requested, addressed to the addressee at such addressee's address set forth herein or at such other address as such party may have specified theretofore by notice delivered in accordance with this Section and actually received by the addressee. To the extent actual receipt is required herein, rejection or other refusal to accept any notice, or the inability to deliver any notice because of a changed address of which no notice was received by the notifying party shall be deemed to be receipt of the notice, demand, request or other communication sent.

Section 7.13    Enforceability.    If any provision of this Deed of Trust or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Deed of Trust nor the application of such provision to any other person or circumstances shall be affected thereby, but rather the same shall be enforced to the greatest extent permitted by law. If the rights and liens created by this Deed of Trust shall be held by a court of competent jurisdiction to be invalid or unenforceable as to any part of the Obligations, the portion of the Obligations which as the result of such invalidity or unenforceability is no longer secured by the liens and security interests herein granted shall be completely paid prior to the payment of the portion, if any, of the Obligations which shall continue to be secured hereunder, and all payments made on the Obligations shall be considered to have been paid on and applied first to the complete payment of the unsecured portion of the Obligations.

Section 7.14  **Binding Effect**. The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective heirs, executors, administrators, personal representatives, successors and assigns of the parties hereto and shall be covenants running with the Land. The term "Grantor" shall include in their individual capacities and jointly all parties hereinabove named a Grantor. The duties, covenants, conditions, obligations, and warranties of Grantor in this Deed of Trust shall be joint and several obligations of Grantor and, if more than one, of each party named a Grantor hereinabove, and each such party's heirs, personal representatives, successors and assigns. Each party who executed this Deed of Trust and each subsequent owner of the Property or any part thereof (other than Holder), covenants and agrees that it will perform, or cause to be performed, each term, provision, covenant and condition of this Deed of Trust.

Section 7.15  **Headings; Construction**. The headings which have been used throughout this Deed of Trust have been inserted for convenience of reference only and do not constitute matter to be construed in interpreting this Deed of Trust. Words of any gender used in this Deed of Trust shall be held and construed to include any other gender and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise. The words "herein," "hereof," "hereunder," and other similar compounds of the words "here" when used in this Deed of Trust shall refer to the entire Deed of Trust and not to any provision or section.

Section 7.16  **Counterparts**. This Deed of Trust may be executed in one or more counterparts, each of which when so executed shall be deemed an original and all of which shall constitute one and the same instrument.

Section 7.17  GOVERNING LAW; VENUE. THE NOTE AND DEED OF TRUST AND ALL OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS, INCLUDING ALL APPLICABLE FEDERAL LAW; ANY LAWSUIT, ACTION OR OTHER PROCEEDING INVOLVING ANY DISPUTE AMONG THE PARTIES ARISING FROM OR RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT SHALL TAKE PLACE IN EL PASO COUNTY, TEXAS. THE PARTIES AGREE AND CONSENT AND SUBMIT TO JURISDICTION AND VENUE IN EL PASO COUNTY, TEXAS, AND WAIVE ANY AND ALL DEFENSES, OBJECTIONS OR CLAIMS THAT JURISDICTION OR VENUE IS NOT PROPER IN EL PASO COUNTY, TEXAS INCLUDING THAT SUCH VENUE IS AN INCONVENIENT FORUM..

Section 7.18  WAIVER OF JURY TRIAL: DAMAGES. UNLESS OTHERWISE REQUIRED BY LAW, BORROWER AND LENDER, EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (A) ANY RIGHT IT OR HE MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY, AND (B) ANY RIGHT IT OR HE MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. FURTHER, BORROWER AND LENDER, EACH HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE NOR AGENT OF LENDER NOR LENDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THESE WAIVERS. BORROWER AND LENDER, EACH ACKNOWLEDGES THAT IT OR HE HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS CONTAINED IN THIS SECTION.

Section 7.19  **Escrow Required**. With each installment Grantor shall deposit with Beneficiary in escrow a pro rata part of the estimated annual ad valorem taxes and casualty insurance premiums for the Property. Grantor shall pay any deficiency within 30 days after notice from Beneficiary. Grantor's failure to pay the deficiency constitutes a default under the deed of trust. The casualty insurance must name Beneficiary as an additional loss payee. Further, at Beneficiary's sole discretion, the Note may be collected by Beneficiary's designated escrow agent or collection agent

(hereinafter referred to as "escrow agent"). Upon receipt of Grantor of notice that the Note has been placed for collection or processing by an escrow agent, Grantor agrees to pay any stated or published fee or fees required by said escrow agent in connection with the collection of the Note per escrow agent's normal business practice. These fees, escrow and collection charges include but are not limited to the costs charged by said escrow agent for escrow agent's set up fees, monthly service fees and for late payment notices. Maker's failure to pay these escrow and collection charges shall be a default under the Note and the Deed of Trust described above. Notwithstanding anything contained in this Deed of Trust to the contrary, any amounts held in escrow at the time of foreclosure or thereafter, may at the Beneficiary's discretion, be used to pay (1) ad valorem taxes and assessments due for the Property, and (2) any amounts due for the casualty insurance policy and (3) Beneficiary for any amounts owed to Beneficiary.

### Section 7.20  Environmental matters; Governmental Requirements; Indemnity.

(a)     For the purposes of this Deed of Trust, Grantor, Holder and Trustee agree that unless the context otherwise specifies or requires, the following terms shall have the following meanings:

"Governmental Requirements" means any and all laws, statutes, ordinances, rules, regulations, orders, or determinations of any governmental authority, whether federal, state, county, city, or otherwise, pertaining to health, safety, or the environment in effect in any and all jurisdictions in which Grantor conducts business or where the Property is located, including without limitation: (i) the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901 et seq.), as amended from time to time including without limitation as amended by the Used Oil Recycling Act of 1980, the Solid Waste Disposal Act Amendments of 1980, and the Hazardous and Solid Waste Amendments of 1984 ("RCRA"), and regulations promulgated thereunder; (ii) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601 et seq.), as amended from time to time, including without limitation as amended by the Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), and regulations promulgated thereunder; (iii) the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.), as amended from time to time; (iv) the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.), as amended from time to time ("ADA"), and all regulations and guidelines promulgated pursuant to the ADA, and all other similar laws, including without limitation the Architectural Barriers Act of 1968, the Texas Architectural Barriers Statute of 1978, and the Fair Housing Amendments Act of 1988, and all as amended from time to time and including all regulations promulgated pursuant to any one or more of them; (v) the Endangered Species Act (15 U.S.C. § 1531 et seq.), as amended from time to time; (vi) laws, statutes, ordinances, rules, regulations, orders, or determinations relating to "wetlands", including without limitation those set forth in the Clean Water Act (33 U.S.C. § 1251 et seq.), as amended from time to time; (vii) the Texas Water Code, as amended from time to time; (viii) the Texas Solid Waste Disposal Act (TEX. HEALTH & SAFETY CODE ANN. § 361.001-361.345), as amended from time to time.

"Hazardous Materials" means (i) any "Hazardous waste" as defined by RCRA, and regulations promulgated thereunder; (ii) any "Hazardous substance" as defined by CERCLA, and regulations promulgated thereunder; (iii) any toxic substance as defined under or regulated by the Toxic Substances Control Act; (iv) asbestos, polychlorinated biphenyls, radon, or explosive or radioactive Materials; (v) underground and above ground storage tanks, whether empty, filled or partially filled with any substance, including without limitation any petroleum product or any other "Hazardous substance"; (vi) any substance the presence of which on the Property is prohibited by any Governmental Requirements; and (vii) any other substance which by any Governmental Requirements requires special handling or notification of any federal, state, or local governmental entity in its collection, storage, treatment, or disposal.

"Hazardous Materials Contamination" means the contamination (whether presently existing or hereafter occurring) of any improvements, facilities, soil, groundwater, air, or other elements on or of the Property by Hazardous Materials, or the contamination of the buildings, facilities, soil, groundwater, air, or other elements on or of any other property as a result of Hazardous Materials at any time (whether before or after the date of this Instrument) emanating from the Property.

"Environmental Claim" means any investigative, enforcement, cleanup, removal, containment, remedial, or other governmental or regulatory action at any time threatened, instituted, or completed pursuant to any Governmental Requirements against Borrower or against or with

respect to the Property or its use, and any claim threatened or made by any person against Borrower or against or with respect to the Property or its use relating to damage, contribution, cost recovery, compensation, or injury resulting from any alleged breach or violation of any Governmental Requirements.

"Environmental Condition" means any condition, circumstance, or matter related to or connected with the Property or Borrower's ownership and use of the Property which is covered by any Governmental Requirements.

(b)     Grantor represents and warrants and covenants and agrees that (i) Grantor has not used and will not use and, to the best of Grantor's knowledge, no prior owner or current or prior tenant, subtenant, or other occupant of all or any part of the Property has used or is using Hazardous Materials on, from or affecting the Property in any manner that violates any laws pertaining to Hazardous Materials applicable to Grantor or to the Property; (ii) to the best of Grantor's knowledge, no Hazardous Materials have been disposed of on the Property nor have any Hazardous Materials migrated onto the Property, in either event in violation of any laws pertaining to Hazardous Materials applicable to Grantor or to the Property; and (iii) Grantor will not permit or suffer any such violation of any laws pertaining to Hazardous Materials applicable to Grantor or to the Property.

(c)     In the event that any investigation, site monitoring, containment, clean-up, removal, restoration or other remedial work of any kind or nature (hereinafter referred to as the "remedial work") is required under any laws pertaining to Hazardous material applicable to Grantor or to the Property, because of, or in connection with, the current or future presence, suspected presence, release or suspected release of a Hazardous material in or about the air, soil, ground water, surface water or soil vapor at, on, about, under or within the Property (or any portion thereof), Grantor within the time periods required by the applicable laws pertaining to Hazardous Materials, commence and thereafter diligently prosecute to completion, all such remedial work. All remedial work shall be performed by contractors reasonably approved in advance by Holder and under the supervision of a consultant engineer reasonably approved by Holder. All costs and expenses of such remedial work shall be paid by Grantor including, without limitations, Holder' reasonable attorney's fees and costs incurred in connection with monitoring or review of such remedial work. In the event Grantor shall fail to timely prosecute to completion such remedial work, Holder may, but shall not be required to, cause such remedial work to be performed and all costs and expenses thereof or incurred in connection therewith, shall be immediately due payable by Grantor to Holder and shall become part of the Indebtedness.

(d)     Grantor shall provide Holder with prompt written notice (1) upon Grantor's becoming aware of any release or threat or release of any Hazardous Materials upon, under or from the Property in violations of any laws pertaining to Hazardous Materials applicable to Grantor or to the Property, (2) upon Grantor's receipt of any notice from any federal, state, municipal or other governmental agency or authority in connection with any Hazardous Materials located upon or under or emanating from the Property; and (3) upon Grantor's obtaining knowledge of any incurrence of expense, for which Grantor or the Property could be liable, by any governmental agency or authority in connection with the assessment, containment or removal of any Hazardous Materials located upon or under or emanating from the Property.

(e)     Grantor agrees with Holder and Trustee that all risk of loss associated with the presence of any Hazardous Material in, on, or about the Property or with respect to any Hazardous Materials Contamination of the Property or any adjacent property shall lie solely with Grantor who hereby agrees to bear all risks and costs associated with any damages or liability therefrom including any and all costs of cleaning up, remediating, or other-wise curing any Hazardous Materials Contamination. Grantor shall indemnify, defend, and hold Holder harmless from and against all liabilities, damages, claims, costs and expenses (including reasonable costs of defense), arising out of or associated with, in any way, the existence of Hazardous Materials in, on, or about the Property or any Hazardous Materials Contamination.

(f)     Grantor shall at all times comply fully with all applicable Governmental Requirements.

(g)     Holder may enter the Property at reasonable times to inspect for the existence of Hazardous Materials or Hazardous Materials Contamination. If Holder reasonably believes that the

value of the Property may be adversely affected by reason of Hazardous Materials or Hazardous Materials Contamination, then Holder may, at Grantor's expense, have an environmental study or audit made with respect to the Property, in such detail and scope as the circumstances then warrant, provided that Holder may not exercise such right more frequently than once each twelve (12) months unless there is reasonably objective evidence or a governmental claim that Hazardous Materials or Hazardous Materials Contamination affect the Property.

(h)     Notwithstanding any provision in this Section, or elsewhere in this Deed of Trust, or any rights or remedies granted by this Deed of Trust, Holder does not waive and expressly reserves all rights and benefits now or hereafter accruing to or available to Holder under the "security interest exception" under Federal Law. No action taken by Holder pursuant to this Deed of Trust or any other loan document shall be deemed or construed to be a waiver or relinquishment of any such rights or benefits under the "secured creditor exception."

Section 7.21   Partial Release. Provided Grantor in not in default under any of the terms and conditions of this Deed of Trust or the Note, and provided no event has occurred that, with notice, passage of time, or both, will become an event of default, Grantor is entitled to a partial release of the lien of the Deed of Trust with respect to Parcel 2 of the Property. A Partial Release will be delivered upon a lump sum payment under the Note of the amount of $75,000.00.

IN WITNESS WHEREOF, this instrument has been executed and made effective as of the 30 day of MAY, 2018.

GRANTOR:

DAWN STAR BLAZER, SUCCESSOR TRUSTEE
FOR THE VAL-ELIZ CHILDREN'S TRUST,
UNDER TRUST AGREEMENT DATED
DECEMBER 13, 2006

THE STATE OF TEXAS )

COUNTY OF EL PASO )

BEFORE ME_____, on this day personally appeared DAWN STAR BLAZER, known to me (or proved to me on the oath of _____ or through _____ ) to be the person whose name is/are subscribed to the foregoing instrument and acknowledged to me that she executed the same by proper authority as Successor Trustee of THE VAL-ELIZ CHILDREN'S TRUST, UNDER TRUST AGREEMENT DATED DECEMBER 13, 2006, on behalf of said trust, for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this 30 day of MAY, 20f8.

THELMA T. PADILLA
NOTARY PUBLIC
NOTARY ID# 3921643
In and for the State of Texas
My commission expires
FEBRUARY 26, 2021

NOTARY PUBLIC in and for the
State of Texas
My Commission expires:_____

Prepared by:
Anderson Bright & Associates, P.C.
Steven E. Anderson
1533 Lee Trevino #205
El Paso, Texas 79936
Telephone No. 595-1380

Return to: MJ Real Properties, Inc
Re: Val - Eliz Children's Trust
8650 Yermoland Drive
El Paso, TX 79907

Requested by and information (title commitment) provided by: Lone Star Title - Zaragoza

## EXHIBIT "I"

Parcel 1. Tract 3-A-30, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas, according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof for all **purposes intended; and**

Parcel 2. Tract 3-E, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas, according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "B" attached hereto and made a part hereof for all purposes intended., municipally known as 13441 & 13451 Montana Avenue, **Socorro, Texas 79938.**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY OR YOUR DRIVER'S LICENSE NUMBER.**

## APPOINTMENT OF SUBSTITUTE TRUSTEE

Date:      November 13, 2019.

Deed of Trust

    Date:                May 30, 2018

    Grantor:             Dawn Star Blazer, Successor Trustee for the Val-Eliz Children's Trust under Trust Agreement dated December 13, 2006.

    Grantor's County:    El Paso County, Texas

    Beneficiaries:       MJ Real Properties, Inc.

    County Where Property is Located:  El Paso County, Texas

    Recording Information:   Instrument File No. 20180043800 recorded in the Real Property Records of El Paso County, Texas

    Property:   Parcel 1: Tract 3-A-30, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas, according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof for all purposes intended; and

    Parcel 2: Tract 3-E, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "B" attached hereto and made a part hereof for all purposes intended, municipally known as 13441 & 13451 Montana Avenue, Socorro, Texas 79938,

Note

    Date:      May 30, 2018

    Amount:    $400,000.00

16299.101/CPTN/1484582.1                               1

Maker:    Dawn Star Blazer, Successor Trustee for the Val-Eliz Children's Trust

Payee:    MJ Real Properties, Inc.

Holder:   MJ Real Properties, Inc.

Substitute Trustee Information

Substitute Trustee:                    Clyde A. Pine, Jr.

Substitute Trustee's Mailing Address:    P.O. Drawer 1977, El Paso, Texas 79999

Grantor has failed to perform the obligations set out in the Deed of Trust (the "Deed of Trust"), and in accordance with the provisions of those instruments, MJ Real Properties, Inc., being the beneficiary under the Deed of Trust (the "Beneficiary") requests that the Property be sold in a Trustee's sale.

The Beneficiary also appoints Substitute Trustee to act in accordance with the Deed of Trust and to sell the Property. The Beneficiary requests copies of the Notice of Substitute Trustee's Sale from Substitute Trustee so that notice of the sale can be filed and furnished to Grantor in accordance with §51.002 of the Texas Property Code.

MJ REAL PROPERTIES, INC.

By: _____

Michael Johnson, President

STATE OF TEXAS          )
                        )
COUNTY OF EL PASO       )

This instrument was acknowledged before me this 13th day of November, 2019, by Michael Johnson, the President of MJ Real Properties, Inc.

ANAISABEL LOYA
Notary Public, State of Texas
Comm. Expires 03-11-2023
Notary ID 131924293

Notary Public in and for the State of Texas

16299.101/CPIN/1484582.1                    2

**AFTER RECORDING, RETURN TO:**
Clyde A. Pine, Jr.
Mounce, Green, Myers,
Safi, Paxson & Galatzan, P.C.
P.O. Drawer 1977
El Paso, Texas 79999-1977



EXHIBIT

A

POOR QUALITY ORIGINAL
BEST AVAILABLE IMAGE

Exh"A"

L16-1318

POOR QUALITY COPY
BEST AVAILABLE FROM

PROPERTY DESCRIPTION

BEING the description of a parcel of land lying in and being a portion of Section 26, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at the corner common to Sections 25, 26, 35 and 36, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas; thence North 0° 33' 12" West along the boundary line between Sections 25 and 26 a distance of 194.56 feet to a point in the northerly right of way line of the U. S. Highway 62 and 180; thence South 81° 15' 30" West along said right of way line a distance of 903.98 feet to the true Point of Beginning of the parcel being described;

THENCE South 81° 15' 30" West continuing along the northerly right of way line of the U. S. Highway 62 and 180 a distance of 96.29 feet;

THENCE North 0° 33' 12" West a distance of 564.81 feet to a point in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 56' 44" East along the centerline of said Road Easement a distance of 953 feet;

THENCE South 0° 33' 12" East a distance of 550.07 feet to the true Point of Beginning of the parcel being described, containing 1.220 acres more or less.

)                                    )          EXHIBIT

                                                   B

A portion of Section 26, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas, and being more particularly described by metes and bounds as follows:

.BEGINNING at the corner common to Sections 25, 26, 35 and 36, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas; thence North 0° 33' 12" West along the boundary line between Sections 25 and 26 a distance of 194.58 feet to a point in the northerly right of way line of the U.S. Highway 62 and 180; thence South 81° 15' 30" West along said right of way line a distance of 1039.27 feet to the true Point of Beginning of the parcel being described;

THENCE South 81° 15' 30" West continuing along the northerly right of way line of the U.S. Highway 62 and 180 a distance of 101.03 feet;

THENCE North 0° 33' 12" West a distance of 580.08 feet to a point in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 56' 44" East along the centerline of said Road Easement a distance of 100.00 feet;

THENCE South 0° 33' 12" East a distance of 564.81 feet to the true Point of Beginning of the parcel being described, containing 1.314 acres more or less.

N/K/A
TRACT 3-E

# EXHIBIT

SCANNED

Doc# 20190096069
#Pages 5    # FPages 1
12/16/2019 4:15:19 P
Filed & Recorded in
Official Records of
El Paso County
Delia Briones
County Clerk
Fees $42.00

I hereby certify that this instrument was filed on the date and time stamped
hereon by me and was duly recorded by document number in the Recording
Division of Real Property in El Paso County.

Delia Briones

EL PASO COUNTY, TEXAS



MOUNCE, GREEN, MYERS,
SAFI, PAXSON & GALATZAN
A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS AT LAW

ANDRES E. ALMANZAN*
RAYMOND BENAVIDES III*
MIKWAA N. BHATTI*
JOHN S. BIRKELBACH
JONAH V. CHAVEZ*
MARK D. DORE*
LAURA ENRIQUEZ*
MICHELLE D. ESPARZA
CARL H. GREEN
FREDERICK C. HUTTERER
BRUCE A. KOEHLER*
RYAN LITTLE*
MATTHEW G. MARQUEZ
JAMES A. MARTINEZ
DAVID M. MIRAZO*
CAL MUNDELL
H. KEITH MYERS
KURT G. PAXSON

MONICA I. PEREZ*
CLYDE A. PINE, JR.*
S. ANTHONY SAFI
DARRYL S. VEREEN
GABRIEL J. YANCEY*

RENE CARLO BENAVIDES
STEVEN L. HUGHES
ARTHUR R. PLACENH
OF COUNSEL

MORRIS A. GALATZAN
(1911-1999)
WILLIAM J. KIRK
(1940-2002)
WILLIAM J. MOUNCE
(1929-2019)

*ALSO MEMBER OF NEW MEXICO BAR

TELEPHONE: (915) 532-2000

MAILING ADDRESS:
P.O. BOX 1977
EL PASO, TEXAS 79999-1977

STREET ADDRESS:
100 N. STANTON, SUITE 1000
EL PASO, TEXAS 79901-1463

FACSIMILE: (915) 541-1548
WEBSITE: WWW.MGMSG.COM

March 24, 2020

**Certified Mail, Return Receipt**
**Requested & First Class Mail**
Dawn Star Blazer,
Successor Trustee for the
Val-Eliz Children's Trust
5700 Flager
El Paso, Texas 79938

**Certified Mail, Return Receipt**
**Requested & First Class Mail**
Dawn Star Blazer,
Successor Trustee for the
Val-Eliz Children's Trust
13441 Montana Avenue
Socorro, Texas 79938

**Certified Mail, Return Receipt**
**Requested & First Class Mail**
Dawn Star Blazer,
Successor Trustee for the
Val-Eliz Children's Trust
13451 Montana Avenue
Socorro, Texas 79938

**Certified Mail, Return Receipt**
**Requested, Facsimile & Email**
Richard Roman
1018 Brown Street
El Paso, Texas 79902

Re: Notice of Default and Notice of Intent to Accelerate Note; 13441 Montana Avenue, Socorro, Texas 79938 & 13451 Montana Avenue, Socorro, Texas 79938

Dear Mr. Blazer:

On behalf of MJ Real Properties, Inc. (the "Creditor"), notice is hereby given to Dawn Star Blazer, Successor Trustee for the Val-Eliz Children's Trust (the "Debtor") of default under that certain Note dated May 30, 2018 in the original principal amount of $400,000.00 from the Debtor to the order of Creditor (the "Note"). The Creditor is the current owner and holder of the Note. Specifically, the Debtor has failed to timely make the payment due under the Note for March 2020.[1]

The Note is secured by a deed of trust lien under that certain Deed of Trust, Security Agreement, Assignment of Rents, Fixture Filing and Financing Statement dated May 30, 2018 from the Debtor to Steve Anderson, Trustee for the benefit of the Creditor, recorded under

---

[1] The Note was previously accelerated but then deaccelerated by means pursuant to a Letter Agreement dated February 3, 2020 between the Creditor and the Debtor.

Dawn Star Blazer
March 24, 2020
Page 2

Document No. 20180043800, Real Property Records of El Paso County, Texas (the "Deed of Trust"), covering the following described property:

Parcel 1: Tract 3-A-30, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas, according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof for all purposes intended; and

Parcel 2: Tract 3-E, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "B" attached hereto and made a part hereof for all purposes intended, municipally known as 13441 & 13451 Montana Avenue, Socorro, Texas 79938,

including such other property, real and personal, that may be covered by or otherwise described in the Deed of Trust (collectively, the "Property"). The Creditor is the current owner and holder of the Note and Deed of Trust.

Unless all arrearages and other amounts currently owing under the Note are paid in full within twenty-one (21) days from the date of this letter, the Note shall be automatically accelerated and declared due and payable in full. Demand is hereby made that Debtor pays to the Creditor c/o the undersigned in cash or certified funds such amount due under the Note. The Debtor may contact me on or before such deadline to get the exact amount.

If defaults under the Note are not timely cured, and the Note, once accelerated, is not promptly paid, the Creditor intends to seek foreclosure under the Deed of Trust of the lien on the Property, and to sell the Property at a foreclosure sale.

The Creditor reserves all rights and remedies under law or under the Note, Deed of Trust, and all other contracts and instruments against any person, entity, or property.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Your prompt attention is strongly encouraged. Please do not hesitate to contact me if you have any questions, comments, or objections to any of the foregoing.

This is an attempt to collect a debt, and any information obtained will be used for that purpose. Insofar as Richard Roman represents the Debtor, a copy of this letter is also being provided to him.

16299 101/CPIN/

Dawn Star Blazer
March 24, 2020
Page 3

Very truly yours,

MOUNCE, GREEN, MYERS, SAFI, PAXSON
& GALATZAN
A Professional Corporation

By:_____
        Clyde A. Pine, Jr.

cc:     MJ Real Properties, Inc.
        Richard Roman

16299 101/CPIN/

Dawn Star Blazer
March 24, 2020
Page 4



EXHIBIT

_A_

POOR QUALITY ORIGINAL
BEST AVAILABLE IMAGE

Exh "A"

L16-1318

POOR QUALITY COPY
BEST AVAILABLE IMAGE

PROPERTY DESCRIPTION

BEING the description of a parcel of land lying in and being a portion
of Section 26, Block 79, Township 3, Texas and Pacific Railway Surveys, El
Paso County, Texas, and being more particularly described by metes and
bounds as follows:

BEGINNING at the corner common to Sections 25, 26, 35 and 36, Block 79,
Township 3, Texas and Pacific Railway Surveys, El Paso County, Texas; thence
North 0° 33' 13" West along the boundary line between Sections 25 and 26 a
distance of 194.56 feet to a point in the northerly right of way line of
the U. S. Highway 62 and 180; thence South 41° 11' 30" West along said right
of way line a distance of 979.00 feet to the true Point of beginning of
the parcel being described;

THENCE South 41° 15' 30" East continuing along the northerly right of
way line of the U. S. Highway 62 and 180 a distance of 90.29 feet;

THENCE North 87° 53' 13" West a distance of 550.51 feet to a point
in the centerline of a 60 foot wide Road Easement;

THENCE North 07° 16' 44" East along the centerline of said Road Easement
a distance of 783.1 feet;

THENCE South 0° 33' 13" East a distance of 550.37 feet to the true
Point of beginning of the parcel being described, containing 4.020 acres
more or less.

16299 101/CPIN/

Dawn Star Blazer
March 24, 2020
Page 5



A portion of Section 26, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at the corner common to Sections 25, 26, 35 and 36, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas; thence North 0° 33' 12" West along the boundary line between Sections 25 and 26 a distance of 194.58 feet to a point in the northerly right of way line of the U.S. Highway 62 and 180; thence South 81° 15' 30" West along said right of way line a distance of 1639.27 feet to the true Point of Beginning of the parcel being described;

THENCE South 81° 15' 30" West continuing along the northerly right of way line of the U.S. Highway 62 and 180 a distance of 101.03 feet;

THENCE North 0° 33' 12" West a distance of 580.08 feet to a point in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 36' 44" East along the centerline of said Road Easement a distance of 100.00 feet;

THENCE South 0° 33' 12" East a distance of 564.81 feet to the true Point of Beginning of the parcel being described, containing 1.314 acres more or less.

N/K/A
TRACT 3-E



ANDRÉS H. ALMANZAN*
RAYMOND BENAVIDES III*
MERWAN N BHATTI*
JOHN S HINKELBACH
MARK D DORE *
LAURA ENRIQUEZ*
MICHELLE D ESPARZA
CARL H GREEN
FREDERICK C HUTTERER
BRUCE A KOEHLER*
RYAN LITTLE*
MATTHEW G MARQUEZ
JAMES A MARTINEZ
DAVID M MIRAZO*
CAL MUNDELL
H KEITH MYERS
KURT G PAXSON
MONICA I PEREZ*

CLYDE A PINE, JR *
S ANTHONY SAFI
DARRYL S VEREEN
GARRETT J YANCEY*

RENE CARL O HINAVIDES
STEVEN L HUGHES
ARTHUR R PIACENTI
OF COUNSEL

MORRIS A GALATZAN
(1911-1999)
WILLIAM J KIRK
(1940-2002)
WILLIAM J MOUNCE
(1929-2018)

## MOUNCE, GREEN, MYERS, SAFI, PAXSON & GALATZAN
### A PROFESSIONAL CORPORATION
### ATTORNEYS AND COUNSELORS AT LAW

TELEPHONE: (915) 532-2000

MAILING ADDRESS:
P O BOX 1977
EL PASO, TEXAS 79999-1977

STREET ADDRESS:
100 N STANTON, SUITE 1000
EL PASO, TEXAS 79901-1463

FACSIMILE: (915) 541-1548
WEBSITE: WWW MGMSG COM

May 11, 2020

**Certified Mail, Return Receipt**
**Requested & First Class Mail**
Dawn Star Blazer,
Successor Trustee for the
Val-Eliz Children's Trust
5700 Flager
El Paso, Texas 79938

**Certified Mail, Return Receipt**
**Requested & First Class Mail**
Dawn Star Blazer,
Successor Trustee for the
Val-Eliz Children's Trust
13441 Montana Avenue
Socorro, Texas 79938

**Certified Mail, Return Receipt**
**Requested & First Class Mail**
Dawn Star Blazer,
Successor Trustee for the
Val-Eliz Children's Trust
13451 Montana Avenue
Socorro, Texas 79938

Re:     Notice of Acceleration and Trustee Sale

Dear Ms. Blazer:

On behalf of MJ Real Properties, Inc. (the "Creditor"), notice is once again hereby given to Dawn Star Blazer, Successor Trustee for the Val-Eliz Children's Trust under Trust Agreement dated December 13, 2006 (the "Debtor") of default under that certain Note dated May 30, 2018 in the original principal amount of $400,000.00 from the Debtor to the order of Creditor (the "Note"). The Creditor is the current owner and holder of the Note. Specifically, the Debtor has failed to make any payments due under the Note since March, 2020.

The Note has been previously accelerated by letter dated March 24, 2020 and declared due and payable in full. Demand is hereby made that the Debtor pay to the Creditor c/o the undersigned in cash or certified funds the entire amount due under the Note on or before June 2, 2020 at 11:00 a.m. You may contact me on or before such deadline to get the exact amount.

16299 101/CPIN/1525352 1

Dawn Star Blazer
May 11, 2020
Page 2

The Note is secured, among other things, by a deed of trust lien under that certain Deed of Trust, Security Agreement, Assignment of Rents, Fixture Filing and Financing Statement dated May 30, 2018 from the Debtor to Steve Anderson, Trustee for the benefit of the Creditor, recorded under Document No. 20180043800, Real Property Records of El Paso County, Texas (the "Deed of Trust"), covering the following described properties:

Parcel 1: Tract 3-A-30, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas, according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof for all purposes intended; and

Parcel 2: Tract 3-E, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "B" attached hereto and made a part hereof for all purposes intended, municipally known as 13441 & 13451 Montana Avenue, Socorro, Texas 79938,

(collectively, the "Properties"). Creditor is the current owner and holder of the Deed of Trust and the lien thereunder.

Pursuant to the Deed of Trust, the Creditor has directed the undersigned, being the Trustee under the Deed of Trust, to sell the Property at public auction on June 2, 2020. The Property will be sold at the sale to the highest bidder or bidders for cash, except that the Creditor may bid credit against the indebtedness secured by the Deed of Trust as allowed by and pursuant to the Deed of Trust. A copy of the Notice of Substitute Trustee's Sale is attached hereto.

You are hereby advised that unless all sums owing to the Creditor under the Note and the Deed of Trust, together with attorneys' fees and foreclosure expenses incurred to date by the Creditor, have been paid to the Creditor, the Creditor intend to have the Property, being also described in the attached Notice of Substitute Trustee's Sale, sold in accordance with such Notice.

Creditor reserve all rights and remedies under law or under the Note, Deed of Trust, and all other contracts and instruments against any person, entity, or property.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Your prompt attention is strongly encouraged. Please do not hesitate to contact me if you have any questions, comments, or objections to any of the foregoing.

16299 101/CPIN/1525352 1

Dawn Star Blazer
May 11, 2020
Page 3

        This is an attempt to collect a debt, and any information obtained will be used for that
purpose. Insofar as Richard Roman represents the Debtor, a copy of this letter is also being
provided to him.

                              Very truly yours,

                              MOUNCE, GREEN, MYERS, SAFI, PAXSON
                              & GALATZAN
                              A Professional Corporation

                              By:
                                    Clyde A. Pine, Jr.

Encl.

cc:     MJ Real Properties, Inc.
        Richard Roman (via Email & Certified Mail, Return Receipt Requested)

Dawn Star Blazer
May 11, 2020
Page 4



EXHIBIT

A

POOR QUALITY ORIGINAL
BEST AVAILABLE IMAGE

Exh "A'

L16-1318

PROPERTY DESCRIPTION

POOR QUALITY COPY
BEST AVAILABLE FILM

BEING the description of a parcel of land lying in and being a portion
of Section 26, Block 79, Township 7, Texas and Pacific Railway Surveys, El
Paso County, Texas, and being more particularly described by metes and
bounds as follows:

BEGINNING at the corner common to Sections 25, 26, 35 and 36, Block 79,
Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas; thence
North 0° 33' 12" West along the boundary line between Sections 25 and 26 a
distance of 194.58 feet to a point in the northerly right of way line of
the U. S. Highway 62 and 180; thence South 81° 15' 30" West along said right
of way line a distance of 9V3.10 feet to the true Point of Beginning of
the parcel being described;

THENCE South 81° 15' 30" West continuing along the northerly right of
way line of the U. S. Highway 62 and 180 a distance of 96.29 feet;

THENCE North 0° 33' 12" West a distance of 360.81 feet to a point
in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 36' 44" East along the centerline of said Road Easement
a distance of 95.3/ feet;

THENCE South 0° 33' 12" East a distance of 350.37 feet to the true
Point of Beginning of the parcel being described, containing 0.840 acres
more or less.

Dawn Star Blazer
May 11, 2020
Page 5



A portion of Section 26, Block 79, Township 2, Texas and
Pacific Railway Surveys, El Paso County, Texas, and being more
particularly described by metes and bounds as follows:

.BEGINNING at the corner common to Sections 25, 26, 35 and
36, Block 79, Township 2, Texas and Pacific Railway Surveys, El
Paso County, Texas; thence North 0° 33' 12" West along the bound-
ary line between Sections 25 and 26 a distance of 194.58 feet to
a point in the northerly right of way line of the U.S. Highway
62 and 180; thence South 81° 15' 30" West along said right of way
line a distance of 1039.27 feet to the true Point of Beginning of
the parcel being described;

THENCE South 81° 15' 30" West continuing along the northerly
right of way line of the U.S. Highway 62 and 180 a distance of
101.03 feet;

THENCE North 0° 33' 12" West a distance of 580.08 feet to
a point in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 56' 44" East along the centerline of said
Road Easement a distance of 100.90 feet;

THENCE South 0° 33' 12" East a distance of 564.81 feet to
the true Point of Beginning of the parcel being described, containing
1.314 acres more or less.

N/K/A
TRACT 3-E

EXHIBIT

Doc# 00000000052
#Pages 1    #NFPages 1
    5/12/2020 3:50:56 PM
Filed & Recorded in
Official Records of
El Paso County

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION
FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY
BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL
SECURITY OR YOUR DRIVER'S LICENSE NUMBER.**

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF TEXAS )
)
COUNTY OF EL PASO )

Notice is hereby given of a public non-judicial foreclosure sale.

1.    Property to be Sold. The properties to be sold, including such other property, real
and personal, that may be covered by or otherwise described in the Deed of Trust, being as follows:

Parcel 1: Tract 3-A-30, Section 26, Block 79, Township 2, TEXAS AND PACIFIC
RAILWAY COMPANY SURVEYS, in El Paso County, Texas, according to a
resurvey made for tax purposes, said tract being more particularly described
by metes and bounds in Exhibit "A" attached hereto and made a part hereof for all
purposes intended; and

Parcel 2: Tract 3-E, Section 26, Block 79, Township 2, TEXAS AND PACIFIC
RAILWAY COMPANY SURVEYS, in El Paso County, Texas according to a
resurvey made for tax purposes, said tract being more particularly described by
metes and bounds in Exhibit "B" attached hereto and made a part hereof for all
purposes intended, municipally known as 13441 & 13451 Montana Avenue,
Socorro, Texas 79938.

This conveyance will be made subject to any exceptions referenced in the Deed of Trust to
the extent the same are still in effect and shall not cover any property that has been released from
the liens of the Deed of Trust. In the event the Deed of Trust is subordinate, the conveyance will
be subject to the prior deed(s) of trust.

2.    Date, Time and Place of Sale. The sale is scheduled to be held at the following
date, time and place:

Date:        June 2, 2020.

Time:        The sale shall commence at a time no earlier than 1:00 p.m. and within three
            hours thereafter.

Place:       In the lobby of the first floor of the El Paso County Courthouse, 500 E. San
            Antonio, El Paso, Texas (that being the area designated by the
            Commissioner's Court of El Paso County, Texas).

16299.101/CPIN/1524521 1                                1

The Deed of Trust permits the Beneficiary to postpone or withdraw, or reschedule the same for another day. In such case the Trustee under the Deed of Trust need not appear at the date, time and place of a scheduled sale to announce the postponement, withdrawal or rescheduling. In such case Notice will be reposted and refiled in accordance with the posting and filing requirements of the Texas Property Code. Such reposting or refiling may be after the date originally scheduled for this sale.

3.      Terms of Sale. The sale will be conducted as a public auction to the highest bidder for cash. Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day of sale for the property being sold.

4.      Type of Sale. The sale is a non-judicial deed of trust lien and security interest foreclosure sale being conducted pursuant to the power of sale granted by that certain Deed of Trust, Security Agreement, Assignment of Rents, Fixture Filing and Financing Statement dated May 30, 2018 from the Dawn Star Blazer, Successor Trustee for the Val-Eliz Children's Trust under Trust Agreement dated December 13, 2006 (the "Debtor") to Steve Anderson, Trustee for the benefit of the MJ Real Properties, Inc., recorded under Document No. 20180043800, Real Property Records of El Paso County, Texas (the "Deed of Trust").

5.      Obligations Secured. The Deed of Trust provides that it secures the payment of the indebtednesses and obligations therein described (collectively, the "Obligations") including but not limited to the Note dated May 30, 2018 in the original principal amount of $400,000.00 from the Debtor to the order of MJ Real Properties, Inc. MJ Real Properties, Inc. is the current owner and holder of the Obligations and the Deed of Trust (the "Beneficiary").

An exact statement of the amount due, owing and secured by the Deed of Trust may be . obtained by contacting the Beneficiary as follows:

> MJ Real Properties, Inc.
> c/o Clyde A. Pine, Jr.
> Mounce, Green, Myers, Safi, Paxson & Galatzan, P.C.
> P.O. Box 1977
> El Paso, Texas 79950-1977.

6.      Default and Request to Act. Default has occurred under the Deed of Trust and Beneficiary, has requested me, as the Substitute Trustee to conduct this sale. Notice is given that prior to the sale Beneficiary may appoint another person as Trustee to conduct the sale.

DATED the _/5/_ day of May, 2020.

CLYDE A. PINE, JR.

STATE OF TEXAS )
)
COUNTY OF EL PASO )

This instrument was acknowledged before me on this the 1st day of May, 2020, by Clyde A. Pine, Jr.

Notary Public in and for the State of Texas

**AFTER RECORDING RETURN TO:**
Clyde A. Pine, Jr.
Mounce, Green, Myers,
Safi, Paxson & Galatzan, P.C.
P.O. Box 1977
El Paso, Texas 79950-1977

JASON A BERLIN
NOTARY PUBLIC
NOTARY ID# 12662220-0
In and for the State of Texas
My commission expires
AUGUST 11, 2020

EXHIBIT

A

POOR QUALITY ORIGINAL
BEST AVAILABLE IMAGE

Exh "A"

L16-B12

POOR QUALITY COPY
BEST AVAILABLE IMAGE

PROPERTY DESCRIPTION

BEING the description of a parcel of land lying in and being a portion of Section 26, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at the corner common to Sections 25, 26, 35 and 36, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas; thence North 0° 33' 12" West along the boundary line between Sections 35 and 26 a distance of 184.58 feet to a point in the northerly right of way line of the U. S. Highway 62 and 180; thence South 61° 13' 30" West along said right of way line a distance of 912.98 feet to the true Point of Beginning of the parcel being described;

THENCE South 61° 15' 30" West continuing along the northerly right of way line of the U. S. Highway 62 and 180 a distance of 96.09 feet;

THENCE North 0° 33' 12" West a distance of 550.81 feet to a point in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 58' 44" East along the centerline of said Road Easement a distance of 98.81 feet;

THENCE South 0° 33' 12" East a distance of 550.37 feet to the true Point of Beginning of the parcel being described, containing 1.220 acres more or less.

)                                        )



EXHIBIT

$\mathcal{B}$

A portion of Section 16, Block 79, Township 2, Texas and
Pacific Railway Surveys, El Paso County, Texas, and being more
particularly described by metes and bounds as follows:

.BEGINNING at the corner common to Sections 25, 26, 35 and
36, Block 79, Township 2, Texas and Pacific Railway Surveys, El
Paso County, Texas; thence North 0° 33' 12" West along the bound-
ary line between Sections 25 and 26 a distance of 194.55 feet to
a point in the northerly right of way line of the U.S. Highway
62 and 180; thence South 81° 13' 30" West along said right of way
line a distance of 1039.27 feet to the true Point of Beginning of
the parcel being described;

THENCE South 81° 13' 30" West continuing along the northerly
right of way line of the U.S. Highway 62 and 180 a distance of
101.03 feet;

THENCE North 0° 33' 12" West a distance of 580.08 feet to
a point in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 56' 44" East along the centerline of said
Road Easement a distance of 100.00 feet;

THENCE South 0° 33' 12" East a distance of 564.81 feet to
the true Point of Beginning of the parcel being described, containing
1.314 acres more or less.

N/K/A
TRACT 3-E

# EXHIBIT

Doc# XXXXXXXX52
#Pages 1   #NPages 1
     5/12/2020 3:50:56 PM
Filed & Recorded in
Official Records of
El Paso County
County Clerk
.co

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY OR YOUR DRIVER'S LICENSE NUMBER.**

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF TEXAS     )
                         )
COUNTY OF EL PASO  )

Notice is hereby given of a public non-judicial foreclosure sale.

1.     Property to be Sold. The properties to be sold, including such other property, real and personal, that may be covered by or otherwise described in the Deed of Trust, being as follows:

Parcel 1: Tract 3-A-30, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas, according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof for all purposes intended; and

Parcel 2: Tract 3-E, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "B" attached hereto and made a part hereof for all purposes intended, municipally known as 13441 & 13451 Montana Avenue, Socorro, Texas 79938.

This conveyance will be made subject to any exceptions referenced in the Deed of Trust to the extent the same are still in effect and shall not cover any property that has been released from the liens of the Deed of Trust. In the event the Deed of Trust is subordinate, the conveyance will be subject to the prior deed(s) of trust.

2.     Date, Time and Place of Sale. The sale is scheduled to be held at the following date, time and place:

Date:        June 2, 2020.

Time:       The sale shall commence at a time no earlier than 1:00 p.m. and within three hours thereafter.

Place:      In the lobby of the first floor of the El Paso County Courthouse, 500 E. San Antonio, El Paso, Texas (that being the area designated by the Commissioner's Court of El Paso County, Texas).

1

The Deed of Trust permits the Beneficiary to postpone or withdraw, or reschedule the same for another day. In such case the Trustee under the Deed of Trust need not appear at the date, time and place of a scheduled sale to announce the postponement, withdrawal or rescheduling. In such case Notice will be reposted and refiled in accordance with the posting and filing requirements of the Texas Property Code. Such reposting or refiling may be after the date originally scheduled for this sale.

3.     Terms of Sale. The sale will be conducted as a public auction to the highest bidder for cash. Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day of sale for the property being sold.

4.     Type of Sale. The sale is a non-judicial deed of trust lien and security interest foreclosure sale being conducted pursuant to the power of sale granted by that certain Deed of Trust, Security Agreement, Assignment of Rents, Fixture Filing and Financing Statement dated May 30, 2018 from the Dawn Star Blazer, Successor Trustee for the Val-Eliz Children's Trust under Trust Agreement dated December 13, 2006 (the "Debtor") to Steve Anderson, Trustee for the benefit of the MJ Real Properties, Inc., recorded under Document No. 20180043800, Real Property Records of El Paso County, Texas (the "Deed of Trust").

5.     Obligations Secured. The Deed of Trust provides that it secures the payment of the indebtednesses and obligations therein described (collectively, the "Obligations") including but not limited to the Note dated May 30, 2018 in the original principal amount of $400,000.00 from the Debtor to the order of MJ Real Properties, Inc. MJ Real Properties, Inc. is the current owner and holder of the Obligations and the Deed of Trust (the "Beneficiary").

An exact statement of the amount due, owing and secured by the Deed of Trust may be obtained by contacting the Beneficiary as follows:

> MJ Real Properties, Inc.
> c/o Clyde A. Pine, Jr.
> Mounce, Green, Myers, Safi, Paxson & Galatzan, P.C.
> P.O. Box 1977
> El Paso, Texas 79950-1977.

6.     Default and Request to Act. Default has occurred under the Deed of Trust and Beneficiary, has requested me, as the Substitute Trustee to conduct this sale. Notice is given that prior to the sale Beneficiary may appoint another person as Trustee to conduct the sale.

DATED the _/st_ day of May, 2020.

CLYDE A. PINE, JR.

STATE OF TEXAS )
)
COUNTY OF EL PASO )

This instrument was acknowledged before me on this the /5⁷ day of May, 2020, by Clyde A. Pine, Jr.



Notary Public in and for the State of Texas

**AFTER RECORDING RETURN TO:**
Clyde A. Pine, Jr.
Mounce, Green, Myers,
Safi, Paxson & Galatzan, P.C.
P.O. Box 1977
El Paso, Texas 79950-1977

JASON A BERLIN
NOTARY PUBLIC
NOTARY ID# 12662220-0
In and for the State of Texas
My commission expires
AUGUST 11, 2020



POOR QUALITY ORIGINAL
BEST AVAILABLE IMAGE

Ex̄h"A"

L16-1318

POOR QUALITY COPY
BEST AVAILABLE FILM

**PROPERTY DESCRIPTION**

BEING the description of a parcel of land lying in and being a portion of Section 26, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at the corner common to Sections 25, 26, 35 and 36, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas; thence North 0° 33' 12" West along the boundary line between Sections 25 and 26 a distance of 184.58 feet to a point in the northerly right of way line of the U. S. Highway 62 and 180; thence South 81° 15' 30" West along said right of way line a distance of 909.28 feet to the true Point of beginning of the parcel being described;

THENCE South 81° 15' 30" West continuing along the northerly right of way line of the U. S. Highway 62 and 180 a distance of 96.89 feet;

THENCE North 0° 33' 12" West a distance of 550.61 feet to a point in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 58' 44" East along the centerline of said Road Easement a distance of 98.61 feet;

THENCE South 0° 33' 12" West a distance of 550.27 feet to the true Point of Beginning of the parcel being described, containing 1.220 acres more or less.

)                                  )

**EXHIBIT**

*B*

A portion of Section 26, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas, and being more particularly described by metes and bounds as follows:

.BEGINNING at the corner common to Sections 25, 26, 35 and 36, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas; thence North 0° 33' 12" West along 'the boundary line between Sections 25 and 26 a distance of 194.58 feet to a point in the northerly right of way line of the U.S. Highway 62 and 180; thence South 81° 15' 30" West along said right of way line a distance of 1039.27 feet to the true Point of Beginning of the parcel being described;

THENCE South 81° 15' 30" West continuing along the northerly right of way line of the U.S. Highway 62 and 180 a distance of 101.03 feet;

THENCE North 0° 33' 12" West a distance of 560.08 feet to a point in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 56' 44" East along the centerline of said Road Easement a distance of 100.00 feet;

THENCE South 0° 33' 12" East a distance of 564.81 feet to the true Point of Beginning of the parcel being described, containing 1.314 acres more or less.

n/k/a
Tract 3-E

**EXHIBIT**

Doc# 20200042737

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE THIS IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## SUBSTITUTE TRUSTEE'S DEED

STATE OF TEXAS        )
                      )  KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF EL PASO     )

**WHEREAS,** by a certain Deed of Trust, Security Agreement, Assignment of Rents, Fixture Filing and Financing Statement dated May 30, 2018, and recorded under File No. 20180043800, Real Property Records of El Paso County, Texas, to Steve Anderson for the benefit of MJ Real Properties, Inc. (the "Deed of Trust"), Dawn Star Blazer, Successor Trustee for the Val-Eliz Children's Trust under Trust Agreement dated December 13, 2006 (collectively, the "Grantor") conveyed to the Trustee therein named, certain property hereinafter described for the purpose of securing and enforcing payment of a Promissory Note in the original principal amount of $400,000.00 executed by the Grantor and payable to MJ Real Properties, Inc. (the "Note");

**WHEREAS,** MJ Real Properties, Inc., the current holder of the said Note and the Deed of Trust securing payment of same, requested the undersigned Substitute Trustee to enforce the Deed of Trust, after Grantor defaulted under the terms of the said Deed of Trust; and

**WHEREAS,** I as Substitute Trustee, did, on June 2, 2020, after having posted written notice of the time, place and terms of the public sale of the hereinafter described property, which written notice was posted at the Courthouse door of El Paso County, Texas, the county in which said real estate is situated, and which said notice was posted for at least twenty-one (21) days preceding the date of the sale, sell the hereinafter described property at public venue at the south entrance of El Paso County Courthouse, El Paso County, Texas (that being the area designated by the Commissioner's Court of El Paso County, Texas) to MJ Real Properties, Inc., that being the highest bidder for the sum of $375,000.00; and

**WHEREAS,** from the Affidavit hereto attached and made a part hereof, it appears that the beneficiary, Clyde A. Pine, Jr., served notice of such Substitute Trustee's sale by certified mail at least twenty-one (21) days preceding the date of sale on each Debtor/Debtors obligated to pay such indebtedness according to the records of the beneficiary and filed a Notice of such Substitute Trustee's Sale with the County Clerk of El Paso County, Texas, at least twenty-one (21) days preceding the day of sale as required by law; and

**WHEREAS,** all prerequisites required by law and/or by said Deed of Trust have been duly satisfied by the beneficiary therein and by said Substitute Trustee;

**NOW, THEREFORE,** in consideration of the premises and of the credit against the Note from Dawn Star Blazer, Successor Trustee for the Val-Eliz Children's Trust under Trust Agreement dated December 13, 2006 in the amount of $400,000.00, I, as Substitute Trustee, by virtue of the authority conferred upon me in the said Deed of Trust, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said MJ Real Properties, Inc. (the "Grantee"), and its successors and assigns, all of the following described properties situated in El Paso County, Texas:

Parcel 1: Tract 3-A-30, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas, according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof for all purposes intended; and

Parcel 2: Tract 3-E, Section 26, Block 79, Township 2, TEXAS AND PACIFIC RAILWAY COMPANY SURVEYS, in El Paso County, Texas according to a resurvey made for tax purposes, said tract being more particularly described by metes and bounds in Exhibit "B" attached hereto and made a part hereof for all purposes intended, municipally known as 13441 & 13451 Montana Avenue, Socorro, Texas 79938,

including such other property, real and personal, that may be covered by or otherwise described in the Deed of Trust.

**TO HAVE AND TO HOLD** the above-described premises and property together with the rights, privileges and appurtenances thereto belonging unto the said Grantee and its successors and assigns forever, and I, as Substitute Trustee, do hereby bind the said Grantor and their heirs, successors and assigns to warrant and forever defend the said premises unto the said Grantee and its successors and assigns forever against the claim or claims of all persons whomsoever lawfully claiming or to claim the same or any part thereof.

**This conveyance is made on an AS IS basis and with no warranty of any kind except as set forth above, and is subject to any and all liens, easements, restrictions, reservations, covenants, prescriptive, leases, licenses, claims, interests, rights, rights of way, taxes, rights of parties in possession, recorded instruments, and all other matters, whether of record or apparent.**

2

EXECUTED as of the 2nd day of June, 2020.

CLYDE A. PINE, JR., Substitute Trustee

STATE OF TEXAS            )
                          )
COUNTY OF EL PASO         )

      This instrument was acknowledged before me on the 2nd day of June, 2020, by Clyde A. Pine, Jr., Substitute Trustee.

Michele K. Haddad

Notary Public in and for the State of Texas

**AFTER RECORDING, RETURN TO:**
Clyde A. Pine, Jr.
Mounce, Green, Myers, Safi, Paxson & Galatzan
P.O. Drawer 1977
El Paso, Texas 79950-1977



MICHELE K. HADDAD
NOTARY PUBLIC
NOTARY ID# 781749-1
In and for the State of Texas
My commission expires
JUNE 10, 2020

Exh "A"

L16-B18

POOR QUALITY COPY
BEST AVAILABLE FILM

PROPERTY DESCRIPTION

BEING the description of a parcel of land lying in and being a portion of Section 26, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at the corner common to Sections 25, 26, 35 and 36, Block 79, Township 2, Texas and Pacific Railway Surveys, El Paso County, Texas; thence North 0° 33' 12" West along the boundary line between Sections 25 and 26 a distance of 194.38 feet to a point in the northerly right of way line of the U. S. Highway 62 and 180; thence South 81° 15' 30" West along said right of way line a distance of 942.31 feet to the true Point of Beginning of the parcel being described;

THENCE South 81° 15' 30" West continuing along the northerly right of way line of the U. S. Highway 62 and 180 a distance of 96.09 feet;

THENCE North 0° 33' 12" West a distance of 564.81 feet to a point in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 56' 44" East along the centerline of said Road Easement a distance of 95.81 feet;

THENCE South 0° 33' 12" East a distance of 550.07 feet to the true Point of Beginning of the parcel being described, containing 1.220 acres more or less.

)                                        )      

A portion of Section 26, Block 79, Township 1, Texas and
Pacific Railway Surveys, El Paso County, Texas, and being more
particularly described by metes and bounds as follows:

.BEGINNING at the corner common to Sections 25, 26, 35 and
36, Block 79, Township 1, Texas and Pacific Railway Surveys, El
Paso County, Texas; thence North 0° 33' 12" West along the bound-
ary line between Sections 25 and 26 a distance of 194.58 feet to
a point in the northerly right of way line of the U.S. Highway
62 and 180; thence South 81° 15' 30" West along said right of way
line a distance of 1039.27 feet to the true Point of Beginning of
the parcel being described;

THENCE South 81° 15' 30" West continuing along the northerly
right of way line of the U.S. Highway 62 and 180 a distance of
101.03 feet;

THENCE North 0° 33' 12" West a distance of 500.08 feet to
a point in the centerline of a 60 foot wide Road Easement;

THENCE North 89° 56' 44" East along the centerline of said
Road Easement a distance of 100.00 feet;

THENCE South 0° 33' 12" East a distance of 504.81 feet to
the true Point of Beginning of the parcel being described, containing
1.314 acres more or less.

N/K/A

TRACT ● 3-E

# EXHIBIT.



Doc# 20200043737
#Pages 5   #ofPages 1
  6/8/2020 9:06:31 AM
Filed & Recorded in
Official Records of
El Paso County
Delia Briones
County Clerk
Fees $42.00

I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded by document number in the Recording Division of Real Property in El Paso County.

EL PASO COUNTY, TEXAS

## AFFIDAVIT OF NOTICE TO DEBTOR

STATE OF TEXAS )
)
COUNTY OF EL PASO )

Date: June 2, 2020

BEFORE ME, the undersigned authority, on this day personally appeared Clyde A. Pine, Jr. ("Affiant"), who, having been by me first duly sworn, upon oath states the following:

1.    Affiant is a licensed, practicing attorney at law at the time of the events hereinafter described.

2.    Affiant either personally or by agent gave every Debtor/Debtors required by statute proper notice of the default and of the time within which it was required to be cured. To the best of Affiant's knowledge, the default continued beyond the time within which it was required to be cured.

3.    On May 11, 2020, being at least twenty-one (21) days before the resulting substitute trustee's sale, Affiant either personally or by agent prepared notices addressed to the parties set forth below, pursuant to Section 51.002 of the Texas Property Code (the "Code"), each such notice containing a true and correct copy of the Notice of Substitute Trustee's Sale. On said date, Affiant personally or by agent mailed by certified mail, return receipt requested, postage prepaid, said notices addressed to the following:

Dawn Star Blazer,            Dawn Star Blazer,            Dawn Star Blazer,
Successor Trustee for the    Successor Trustee for the    Successor Trustee for the
Val-Eliz Children's Trust    Val-Eliz Children's Trust    Val-Eliz Children's Trust
5700 Flager                  13441 Montana Avenue         13451 Montana Avenue
El Paso, Texas 79938         Socorro, Texas 79938         Socorro, Texas 79938

Richard A. Roman (attorney for Debtor)
1018 Brown Street
El Paso, Texas 79902

Notice of the sale was given to every debtor required by statute, in strict compliance with the provisions of the Deed of Trust and the requirements of Section 51.002 of the Code.

4.    To the best of Affiant's knowledge, the Debtor was not, during the ninety (90) days prior to the foreclosure sale, or at any time since, and is not now, in the military or naval services of the United States of America and was alive and competent at the time of the above-described sale.

5. In accordance with the terms of the Deed of Trust, Notice of Substitute Trustee's Sale, and Section 51.002 of the Code, foreclosure of the lien contained in the Deed of Trust against the Property was held on June 2, 2020.

EXECUTED effective the 2nd day of June, 2020.

CLYDE A. PINE, JR.

STATE OF TEXAS )
)
COUNTY OF EL PASO )

This instrument was acknowledged before me on 2nd day of June, 2020, Clyde A. Pine, Jr.

MICHELE K. HADDAD
NOTARY PUBLIC
NOTARY ID# '81749·1
In and for the State of Texas
My commission expires
JUNE 10, 2020

Michele K. Haddad

Notary Public in and for the State of Texas

**AFTER RECORDING RETURN TO:**
Clyde A. Pine, Jr.
Mounce, Green, Myers, Safi, Paxson & Galatzan
P.O. Drawer 1977
El Paso, Texas 79999-1977